THE BOARD OF COMMISSIONERS OF PUBLIC CHARITIES AND COR-RECTION OF THE CITY OF NEW YORK *against* JOHN McGURRIN.

(Decided March 6th, 1876.)

The Board of Commissioners of Public Charities and Correction of the City of New York, created by the city charter (L. 1873, ch. 335, § 74), are the over-seers of the poor of a town, so as to enable them to sue for penalties imposed by the act " to suppress intemperance, and to regulate the sale of intoxicating liquors " (L. 1857, ch. 628), and which, by the statute, are to be sued for and recovered " in a civil action by and in the name of the overseers of the poor of the town in which the alleged penalty was incurred."

The different bodies who have acted as overseers of the poor, and exercised their powers in the city of New York, examined and explained. Per Chief Justice DALY.

APPEAL by plaintiff from an order of this court made by Judge LOEW sustaining a demurrer to the complaint, and also from the judgment entered on the order.

The action was brought by the plaintiff, the board of com-missioners of public charities and correction of the city of New York, under the provisions of L. 1857, ch. 628, entitled " an act to suppress intemperance, and to regulate the sale of intox-

---

* Decision affirmed in Court of Appeals, June 12, 1877 (5 Week. Dig. 66).

icating liquors," to recover 1. The penalty of $50, provided by § 13 of the act of 1857, for selling any strong or spirituous liquors or wines in quantities less than five gallons at a time, without having a license therefor, and 2. To recover the penalty of $50 imposed by the act of 1857, as amended by L. 1873, ch. 820, for selling liquor to be drunk on the premises, both of which penalties the statutes provided should be sued for and recovered by and in the name of the overseers of the poor of the town in which the alleged penalty was incurred.

In its complaint the plaintiff alleged that it was in law and in fact the overseer of the poor of the city of New York. The defendant demurred on the ground that the plaintiff had not legal capacity to sue, and was not the overseer of the poor of a town.

The demurrer was sustained, and judgment ordered for the defendant thereon.

*F. Pulver*, for appellant, argued : I. (*a*) By L. 1813, ch. 86, § 246, the mayor, &c., were authorized to appoint a certain number of freeholders, inhabitants, &c., " to be the overseers of the poor thereof," by the name and style of the commissioners of the almshouse and Bridewell of the city of New York, with the " same power and authority of overseeing and providing for the poor of said city," " which overseers of the respective towns of this State have." See Valentine's Laws of the State, relating particularly to the city of New York, p. 1040. (*b*) By L. 1849, ch. 246, §, 4, entitled " an act to provide for the government of the department of alms and penitentiary in the city of New York," there was created the board of " governors of the almshouse," with the powers, duties and authority as conferred on the commissioners of the almshouse in said city. (*c*) By L. 1850, ch. 510, the almshouse department was abolished, and the " department of public charities and correction was created, and by § 24 of the same, it is enacted that, " whenever, in any act or ordinance not inconsistent with this act, but applicable thereto, the words almshouse department of the city of New York shall occur, it shall be taken to mean and refer to the department hereby created ; and in like manner the

words governor or governors of the almshouse shall be taken to mean the commissioner or commissioners provided for in this act." (*d*) By L. 1873, ch. 335, § 74 (city charter), it is provided that the board of public charities and correction " shall possess all the powers and discharge all the duties now conferred on such department by special laws, and by all the provisions of ch. 510, L. 1860, and the acts and parts of acts amendatory thereof, except as the same are modified or repealed by the provisions of this act." II. It is not to be supposed that the legislature, in using the language " overseers of the poor of the town," in the act of 1873, ch. 820, amending § 22 of said act of 1857, it being a statute relating to the whole State, and there being no officer in cities specially designated by the title of overseers of the poor, intended to provide no remedy in cities for the recovery of such penalties.

It is more reasonable to suppose that the intent was to lodge that right, in cities, in the board or officer exercising the like powers and duties of overseers of the poor therein, as exercised by such overseers in country towns. In construing this statute, the court will look to the intent, so as to give it effect, if possible. (1.) Statutes must be expounded according to the meaning, and not according to the letter (*Pillow* v. *Bushnell*, 5 Barb. 156 ; *Leavitt* v. *Blatchford*, Id. 9 ; *People* v. *N. Y. Centl. R. R.* 13 N. Y. 78 ; affi'g 25 Barb. 199). (2.) A thing within the intention is within the statute, though not within the letter. Such construction ought to be put upon it as will not suffer it to be eluded. (Bac. Ab. title Stat. I., 5–10 ; *People* v. *Utica Ins. Co.* 15 Johns. 358 ; *Jackson* v. *Collins*, 3 Cow. 89 ; *Dresser* v. *Brooks*, 3 Barb. 429). (3.) The intention of the statute, when ascertained, should be followed. A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within the letter (*Holmes* v. *Carley*, 31 N. Y. 289 ; affi'g 32 Barb. 444 ; *Chase* v. *N. Y. Centl. R. R. Co.* 26 N. Y. ɔz ɔ ; see also 7 N. Y. 97 ; 11 Id. 593 ; 4 Hill, 384 ; 20 Wend. 561). III. The words " overseers of the poor " are merely descriptive, and do not constitute them such a body as to enable them to sue by their official title ; but actions of this kind may, under the statute, be maintained

in their individual names. (So held by Mr. Justice Hardin of the Supreme court, in construing the statute in question.) The plaintiff herein being a corporate body created by law, and being, by law and in fact, the overseers of the poor of New York city, this action is properly brought in its corporate name. IV. The penalties sought to be recovered in this action, when collected, are to be paid into the county treasury, for the support of the poor of the county (sec. 1 of ch. 820, of Laws of 1873) ; and the plaintiff being the only representative and guardian of the poor of this city, it has the right to maintain the action, even though it be not the "overseer of the poor of a town;" and that irrespective of the wording of the statute, on the principle that, if a statute prohibit the doing of an act under penalty of forfeiture, to be paid to a party grieved, and does not prescribe any mode of recovery, it may be recovered in an action of debt by the party to whom the penalty is payable, or to his representative, as is the case in this action (1 Ld. Raymond, 682 ; Rollin's Ab. 598 ; 2 Edmonds' Statutes atLarge, p. 502, § 1).

*Albert Cardozo*, for respondent.—I. The plaintiffs cannot maintain the action. In 1857, the act to suppress intemperance, &c., was passed (L. 1857, p. 405), and by the 22d section, these penalties were to be sued for by the commissioners of excise. That statute, so far as this city is concerned, was repealed by the metropolitan district excise law (L. 1866, p. 1242). The act of 1866 was repealed by the laws of 1870, p. 175, which together with its provisions, re-enacted the act of 1857, except as thereby modified, and made it general throughout the State.

In 1873 (L. 1873, p. 376), the first section of the act of 1870 was amended, and that section as thus amended shows plainly that the legislature recognized the difference between cities, incorporated villages and towns. In the same year (L. 1873, p. 1234), the twenty-second section of the Laws of 1857, was amended so as to read as follows : " Sec. 22. The penalties imposed by this act, except those provided for by sections fifteen and nineteen, shall be sued for and recovered in a civil action, in the same manner provided by law for the recovery of

penalties by and in the name of the overseer of the poor of the town in which the alleged penalty was incurred." II. The statute as it now stands gives the right to recover penalties by and in the name of the " overseer of the poor of the town." That section can have no application to cities. This is a penal statute, and whoever claims any right under it must show that he is plainly given that right. (1.) It is simply a case where the legislature has omitted to legislate so as to cover all cases. It has provided who may sue in towns, but made no provisions as to cities. (2.) The court cannot supply the omission. Who shall say that if the attention of the legislature had been directed to the subject, it would in cities have seen fit to give the right to persons performing duties similar to those devolved on overseers of the poor in towns? (3.) It is therefore of no consequence whether the plaintiffs in fact perform duties like those charged on overseers of the poor in the towns. They are not the persons named in this statute. (4.) As the act stood in 1857, there was no point as to who should sue. The commissioners of excise were authorized throughout the State. The amendment in 1873 changed that, and omitted to say who should sue in cities.

CHARLES P. DALY, Chief Justice.—The commissioners of charities and corrections are, in this city, the overseers of the poor, discharging the same general duties, in that respect, as the overseers of the poor in other counties. The act of 1813 declared that the commissioners of the almshouse should be the overseers of the poor in this city, and be subject to the same duties and penalties which the overseers of the respective towns in the State had or were subject to (Laws of 1813, p. 430, § 246).

The authority and powers of the commissioners of the almshouse were transferred to the governors of the almshouse (Laws of 1849, p. 367). In 1860 the almshouse department was abolished and the department of public charities and corrections created, the commissioners of which, it is manifest, from the statute making the change, were to exercise the same general powers as overseers of the poor that the previous body did (Laws of 1860, c. 510, §§ 4 to 24).

By the 22d section of the act of 1857, the penalties imposed by the act were to be sued for and recovered in the name of the board of commissioners of excise created by the act (Laws of 1857, c. 628, § 22). By the metropolitan police act of 1866, the commissioners of the board of health of the city were con-stituted the board of excise within the metropolitan police dis-trict, excluding the county of Westchester. How far beyond this this act may have affected the act of 1857, as respects this city, it is not material to inquire, as it was superseded by the provisions of the act of 1870 (Laws of 1870, c. 175), creating a board of excise for the city, consisting of three persons, ap-pointed by the mayor, and which as amended (Laws of 1873, c. 249), created a board of commissioners of excise in each of the cities, incorporated villages and towns of the State.

In the same year (1873) the 22d section of the act of 1857, giving the right to sue for the penalties to the commissioners of excise, was amended by declaring that they should be sued for in the name of the overseers of the poor of the town where the penalty was incurred.

Up to this period no distinction was made between this city and the other parts of the State in respect to the enforcement of the penalties provided for in the acts for the suppression of intemperance and the regulation of the sale of intoxicating liquors, and in my opinion there was no intention on the part of the legislature to make any by the passage of this amendment in 1873. Up to that time the penalties incurred in this city could be sued for by the commissioners of excise, the legisla-tion affecting this city relating simply to how the board or commissioners of excise should be constituted. The change made was clearly intended to be a general one; to give the right to sue for such penalties to the overseers of the poor, in-stead of, as theretofore, to the board or commissioners of excise; and there is nothing to warrant the construction that the inten-tion was, by this change, to provide that no such penalties should be enforced in this city, which would be the effect of holding as the judge below held in sustaining this demurrer.

The 22d section of the act of 1857 gave the power to sue for such penalties only to the boards of commissioners of excise,

that act, in a previous section, having provided for the appointment of such a board in every county of the State, including the city and county of New York; and when the 22d section was amended in 1873, the right of the board of commissioners of excise to sue for such penalties was taken away, as well within the city and county of New York as in the other counties of the State; and if there are no public officers here corresponding to what is denominated in the amendatory statutes, overseers of the poor of towns where the penalty was incurred, then, as I have said, no such penalty can be enforced in this city. It is argued that in amending this section of the act of 1857, the legislature have provided only for those who may sue in *towns*, and have omitted to provide for any other cases, a construction that would exempt all the cities of the State, which, in my judgment, was not the intention of the legislature.

We have, and have always had, in this city, overseers of the poor, under whatever names or organization they have existed. The plaintiffs, the commissioners of charities and correction, are now the overseers of the poor, having succeeded to the same powers and duties as the old commissioners of the almshouse. It does not follow that because this amendment designates overseers of the town where the penalty was incurred, that cities were not intended to be included. "Every borough or city," says Tomlins, "is a town" (Tom. Law. Dict. Town). The greater necessarily includes the less, for a city begins as a village, expands into a town, and afterwards becomes a city, by incorporation or otherwise, for there are cities that were never incorporated (Coke Litt. 109, with Hargrave's notes, 2, 3). "The word *town*," Blackstone says, "has, by the alteration of times and language, become a *generical term*, comprehending under it the several species of *cities*, boroughs, &c.," and adds, "a city is a town incorporated" (1 Bl. Com. 114). In common parlance the word is frequently applied to cities, as leaving town, coming to town, out of town, &c. We have, in this State, the political division of towns, cities and incorporated villages, and that that particular political division is what is meant by the word town, may, in a given case, be apparent from the purpose of the statute. But that is not the case here. This was an

amendment of a section of a statute applying to the whole State. The object in the amendment of it was evidently not to exclude cities from its operation, but to change the manner of suing for the penalties. All the other provisions apply to the cities as well as to the other parts of the State, and it is very evident that the intention was not that all the other portions of the act should apply to this and other cities, except the enforcement of the penalties, the most important part of a statute of this description, as the penalty and its enforcement is the means relied upon to secure obedience to it, and make it effective. Where the law enacted was meant to have effect only within those political divisions of the State denominated towns, it will appear from the nature of the act and its general context. But where it is intended to have effect throughout the whole State, the word town may be read as meaning city, without straining the meaning of the word, or doing any violence to the language of the act. The order below, in my opinion, should be reversed.

LARREMORE, J., concurred ; ROBINSON, J., not voting.

Order reversed.