E. A. BRADISH *vs.* O. H. LUCKEN and others.

February 10, 1888.

Municipal Corporations — Villages — Reincorporation under Act of
    1885.—A village which, as constituted, remained a part of the town in
    which it was situated for certain purposes, was reincorporated in pursu-
    ance of a vote of the electors thereof under Laws 1885, *c.* 145. *Held,*
    that the village did not thereby become a separate organization for all
    purposes, and that the provisions of the General Statutes, relating to
    towns and township organizations, remain in force as respects such vil-
    lage, in so far as they are applicable, and except as contravened by the
    statutory provisions which constitute the village charter.

Same— Liability of Village for Proportion of Township Debt. — The
    village still remains liable for its proportion of the general township in-
    debtedness previously incurred, and also for its proportion of certain
    town charges for general township purposes, not inconsistent with the
    provisions of the chapter referred to.

Same—Taxes for Town Roads and Bridges.—But in respect to roads
    and bridges, the township officers have no jurisdiction or authority within
    the limits of the village so reincorporated, and the latter is not liable to be
    taxed for the expenses of township roads and bridges.

Injunction—Illegal Personal Taxes.—A suit for an injunction to restrain
    the collection of a personal tax cannot be maintained on the grounds that
    a portion of the tax is alleged to be illegal, and that a large number of
    other tax-payers are similarly situated, and that one suit as a precedent
    may determine the same question for all.

The plaintiff, who is a resident, freeholder, and tax-payer of the
town of Fisher but outside of the village of Fisher, brought this
action in the district court for Polk county, to restrain the de-
fendants, who are the county treasurer, clerk of the district court,
and sheriff, from collecting or attempting to collect certain per-
sonal taxes.   The complaint, after setting out the organization of
the town of Fisher, the incorporation and reincorporation of the vil-
lage of Fisher as recited in the opinion, alleges that prior to 1886
the town of Fisher became indebted in the sum of $10,000, for
which it issued and negotiated its bonds, and also became indebted

in various other sums, amounting to $2,500, which remain a charge against the town; that according to the assessments of 1886, the total valuation of personal property within the limits of the town of Fisher was $59,973, of which $38,781 was situated within the limits of the village, and $21,192 was situated in the town outside of the village; that the total valuation of real estate within the town was $125,176, of which property $54,923 was within the limits of the village, and $70,253 was situated in the town outside of the village; that in March, 1886, at a town meeting, it was voted by the town to expend for town purposes $700, for road and bridge purposes $600, for interest on outstanding bonds $800; that prior to October 1, 1886, the town clerk duly certified to the county auditor the amount of taxes so voted and levied, as prescribed by law; that the county auditor, in violation of his official duty, reduced the amount so voted from $2,100 to $1,426.53, extended the amount so reduced only against the property situated in the town outside of the village limits, and refused to extend and charge the amount voted against any of the property within the village limits, and made out the tax-lists accordingly, so that the amount of taxes reduced as aforesaid was extended only against the taxable property in the town outside of the village limits, thereby exempting the village property from all town taxes; that the county auditor, on January 1, 1887, transmitted such erroneous tax-list to the defendant Luken, as county treasurer, for collection, and the defendants are now collecting and threatening to enforce collection of the taxes so erroneously and illegally placed on the list. The complaint then specifies the amount of personal property owned by the plaintiff, and the taxes charged against him by reason of the above facts, and alleges a tender to the county treasurer of an amount sufficient to pay the plaintiff's personal-property taxes properly chargeable against him, providing the town taxes voted as aforesaid had been extended against the property included in the village. The complaint further alleges that the bonded debt of the town was contracted for improvements within the village, and that the town property is almost wholly situated within the village; and that if the property within the village is to be exempt from paying town taxes, as is attempted, then the town would be un-

able to pay its obligations and would become insolvent. The defendants appeal from an order by *Mills*, J., overruling a demurrer to the complaint.

*R. A. Wilkinson*, for appellants.

*H. Steenerson*, for respondent.

VANDERBURGH, J. This appeal is from an order overruling the demurrer to the complaint. The complaint shows that the township of Fisher, in the county of Polk, was organized under the general township organization laws on the 9th day of October, 1876. By Sp. Laws. 1881, *c*. 15, certain sections and parts of sections in the same congressional township, as therein described, were constituted a village corporation under the name of Fisher. It was also provided in the charter that the village should remain a part of the town of Fisher, or Fisher's Landing, as it was called, and that the entire township, including the village, should constitute one election district for general and township elections. Prior to 1886 the township had incurred a bonded indebtedness to the amount of $10,000, bearing interest at the rate of 8 per cent., payable annually, and had also become indebted in various other sums to the amount of $2,500, which remained a charge against the town. And at the annual town meeting, held at the town hall situated in the village in March, 1886, it was duly determined by vote of the electors to raise the following sums by taxation for the ensuing year, viz.: For town purposes, $700; for road and bridge purposes, $600. Thereafter, in April, 1886, in pursuance of a vote of the electors, the village was reincorporated, under Laws 1885, *c*. 145.

The principal question presented here is whether the village thereafter continued to be a part of the township of Fisher for general purposes, and subject to its proportion of the taxes levied for the township indebtedness, and for the special purposes above stated, or for any of them. Under its original act of incorporation, the village constituted one road-district, and appointed its own road-overseer, and the road taxes assessed in the district were expended under the direction of the trustees. By Laws 1885, *c*. 145, § 43, a village constitutes one road-district, and appoints its own road-master or street commissioner, and it is thereby provided that all taxes raised within

the limits of the village for road purposes shall be expended under the direction of the village council, and that no part of the streets or highways of any village shall be in any district established by the town board, or under the control of the town officers, and the latter are relieved from all responsibility for the insufficiency or want of repair thereof; and all bridges are "to be built, maintained, and repaired by the village in which the same are situated;" and such corporations are duly authorized to raise such sums as may be necessary, by taxation to the amount of 2 per cent. upon the assessed valuation of the taxable property of the village.

1. Gen. St. 1878, *c.* 1, § 2, provides that every organized township, and every ward of an incorporated city, shall constitute one election district. No separate provision is made for villages, for it is assumed that the organized township includes villages, and that the township organization act is applicable thereto, except where otherwise provided; while as to cities it is expressly provided, (chapter 10, § 112,) that none of its provisions "apply to any portion of the state which is embraced within the limits of any incorporated city, but each incorporated city shall have and exercise within its limits, in addition to its other powers, the same powers conferred by this chapter upon towns, in the manner prescribed by law." But we think there is nothing in the Law of 1885, *c.* 145, which extends the provisions of the section just quoted to villages organized thereunder, though it necessarily limits the operation and effect of the provisions of the statutes relating to the government and authority of towns as to certain subjects. The law remains unchanged in respect to election districts, and in respect to the duties and authority of the township assessors. *State* v. *Spaude,* 37 Minn. 322, (34 N. W. Rep. 164.) And we think that as to villages organized under the act of 1885, the provisions of the General Statutes relating to towns remain in force in so far as they are applicable, and except as contravened by the statutory provisions which constitute the village charter. Under the state of the law as existing at the time this act was passed, it would require a clear expression of the legislative will, denoting an intention to separate the organizations for all purposes, general as well as special, to warrant a construction by the court which would enable a vil-

lage, after incurring an indebtedness as a part of an organized township, (as in this case,) and sharing the benefits, by its own voluntary act to separate itself entirely and for all purposes from the township organization, and thus shift the burden of the debt upon the remaining portion of the town. In the same connection, also, it will be observed that under section 12 of the same chapter (145) additional territory may be annexed to the village at any time by vote of the electors of such territory and the village. A contrary rule to that above suggested would permit the bulk of taxable property and the majority of the inhabitants to escape liability for debts and obligations theretofore lawfully incurred. For such general purposes, we think the authority of the town continues, and that taxes for the principal and interest of such debts, the validity of which, in this instance, is not questioned, may be levied upon the property of the entire township, including the village. Nor would the fact of the incorporation of the village under the act in question necessarily operate to divest the town of its title to a town hall or other property lawfully held for town purposes, and situated within the limits of the village.

2. In respect to the road and bridge tax in question, we think that it is clear, from the explicit provisions of the charter above quoted, that the township officers have no jurisdiction or authority to expend any money upon roads or bridges within the limits of the village, and the taxes raised therefor within the latter are to be levied, controlled and expended by the village. The money voted at the town meeting is to be raised and expended in that portion of the township outside of the village. And this need not occasion any embarrassment in this case, for under Gen. St. 1878, c. 11, §§ 48, 49, the county auditor could only levy such proportionate part of the amount voted upon the property subject thereto as the rate per cent. allowed by law would permit.

3. In respect to the levy for the amount voted for other town purposes, there is much more doubt, and it is obvious that further legislation is desirable to define and adjust the relations between townships and villages organized under the general law. The electors are authorized to vote certain sums for specific purposes, which are denominated town charges. Gen. St. 1878, c. 10, §§ 16, 104. They may direct sums to be raised for the prosecution or defence of actions,

for the support of the poor, and "for other necessary town charges, as they may deem expedient." They may also provide for and discontinue pounds. Sections 16, 102. There is nothing in the charter which takes away the authority of the supervisors in respect to the poor, and a tax for the support of the poor may be levied upon the whole town. The same is doubtless true of other charges. The appellant does not question the legality or propriety of the amount voted and claimed for town purposes. His contention is simply that the property within the village is not liable for any part of the tax levied by the town authorities to defray the general expenses of the town; and the question in respect to the validity of any particular charge or item as a claim against the village, is not before us for consideration.

4. It is also claimed that this action cannot be maintained because the plaintiff has an adequate remedy at law, and no irreparable injury is threatened the plaintiff requiring the interposition of the court by injunction. This objection is well taken. It may be that a *mandamus* might have been applied for on the relation of the plaintiff, to compel the proper entry and extension of the taxes. 1 Wait, Pr. 118. But we think the better opinion is that an injunction will not issue to restrain the collection of a personal tax where there is a complete remedy at law, solely because there are numerous tax-payers similarly situated, particularly in the absence of any claim that the suit was brought in pursuance of a common understanding, and by the authority of such tax-payers. This action will bind no one but the parties, and plaintiff's rights can be fully protected at law, where one decision, as a precedent, will subserve the same purpose as this action. *Guest* v. *City of Brooklyn*, 69 N. Y. 506. Upon this ground the demurrer should be sustained.

Order reversed.