CHARLES J. RUMSEY *vs.* SAUK CENTRE TOWN.

Submitted on briefs Nov. 19, 1894.    Affirmed Dec. 7, 1894.

**Liability for indebtedness apportioned.**

> *Held,* that Sp. Laws 1885, ch. 296, apportioning the bonded indebtedness of the town of Sauk Centre between the town and the village of the same name, made the village and the town, as between themselves, two separate districts as respects liability for and payment of such indebtedness, and created a primary liability against the village as a corporation, for the part of the indebtedness apportioned to it.   Also, that this was a valid exercise of legislative power.   Also, that under Sp. Laws 1889, ch. 4, the city of Sauk Centre became liable for all the indebtedness of the former village.

Appeal by the defendant, the City of Sauk Centre, from an order of the District Court of Stearns County, *D. B. Searle,* J., made April 12, 1894, overruling its demurrer to the complaint.

Congressional township one hundred and twenty six (126) north, of range thirty four (34) west with six adjacent sections in the next township on the north, was organized prior to 1866 as a town in the county of Stearns and was named Sauk Centre, and ever since has been a public corporation.   Under Sp. Laws 1879, ch. 143, the town on December 30, 1882, issued and delivered to the Little Falls and Dakota Railroad Company in aid of the construction of its railroad, negotiable town bonds to the amount of $12,000 payable to bearer, due ten years thereafter and bearing interest at the rate of eight per cent. a year payable annually.   The bonds were all sold by the company before their maturity and the plaintiff, Charles J. Rumsey became the owner and holder thereof.   On March 1, 1876, the Village of Sauk Centre was incorporated by Sp. Laws 1876, ch. 16, comprising 1,040 acres lying in sections three, four, nine, ten and fifteen in the township of Sauk Centre and was made subject to Laws 1875, ch. 139, providing for the organization of villages (1878 G. S. ch. 10, § 204, et seq.)   This indebtedness of the township of Sauk Centre was by Sp. Laws 1885, ch. 296, apportioned between the town and the village in proportion to the valuation of taxable property in each.   Under Sp. Laws 1889, ch. 4, the Village of Sauk Centre with 880 acres of adjacent land on its western and southern borders was incorporated as the city of Sauk Centre and succeeded

to the property of the village and assumed its indebtedness. The plaintiff commenced this action November 6, 1893, against the town to recover the principal and unpaid interest due on the bonds. On January 12, 1894, the city was on motion of the town made a co-defendant and the complaint was amended so as to allege the facts above stated. Thereupon the city demurred to this amended complaint. . The demurrer was overruled and it appeals.

*Geo. H. Reynolds* and *M. C. Kelsey,* for appellant.

The city of Sauk Centre is not liable as a municipal corporation upon the bonds issued by the town of Sauk Centre. If Sp. Laws 1885, ch. 296, is valid and by the act incorporating the city of Sauk Centre it assumed the payment of the debts of the village of Sauk Centre, still the city of Sauk Centre should not be made a party to this action. The most that could be claimed is that after judgment has been recovered against the municipal corporation which issued the securities, the city of Sauk Centre should be compelled to bear its share of the tax necessary to pay the judgment.

Sp. Laws 1885, ch. 296, is void for two reasons: *First,* because it is so indefinite and uncertain that it is impossible to ascertain what it was the Legislature intended to apportion between the village and the town of Sauk Centre. It simply apportions all indebtedness created by the issuance of bonds prior to the year 1883. No reference is made to any particular bonds, either by their amount or the year in which they were issued, or the purpose for which they were issued. *Second,* because it violates the obligations of the contract between the town of Sauk Centre and the Little Falls & Dakota Railway Company, and affects whomsoever may be the owner of these bonds. *State* v. *City of Lake City,* 25 Minn. 404.

The village of Sauk Centre contained 1,040 acres of land; the city of Sauk Centre at the time of its incorporation contained 1,920 acres, its area being 880 acres more than the village. How can it be determined in this action what part of this bonded indebtedness these 880 acres shall pay? It was liable as a part of the town after judgment had been recovered on the bonds against the town, to pay its proportionate share of the tax necessary to liquidate the judgment. It never was a part of the village. It is now a part of the city. The complaint should state facts from which the court

could ascertain how and in what manner a judgment against the city of Sauk Centre could be collected.

Sp. Laws 1885, ch. 296, is void for the reason that the real subject of the act is not expressed in its title. It attempts to adjudicate upon the validity of the bonds in suit, and to fix a liability upon the village of Sauk Centre without its consent. *State ex rel.* v. *Haben,* 22 Wis. 660; *People ex rel.* v. *Mayor of Chicago,* 51 Ill. 17; *Lovingston* v. *Wider,* 53 Ill. 302; *Wider* v. *City of East St. Louis,* 55 Ill. 133; *Gage* v. *Graham,* 57 Ill. 144; *City of East St. Louis* v. *Witts,* 59 Ill. 155; *Sanborn* v. *Commissioners of Rice County,* 9 Minn. 273; *Matter of Extension of Prospect Park,* 60 N. Y. 400.

*J. L. Washburn, L. E. Judson,* and *A. C. Robertson,* for respondent.

The complaint alleges all of the facts to show affirmatively the due issuance of the bonds. At that time the village of Sauk Centre was a village incorporation, under Laws 1875, ch. 139, and Sp. Laws 1876, ch. 16, and existed within the limits of the township. The village and the township constituted one election district and the village remained a part of the township for all purposes except as otherwise provided in the village law. *Moriarity* v. *Gullickson,* 22 Minn. 39; *State ex rel.* v. *Fitzgerald,* 37 Minn. 26; *State ex rel.* v. *Spaude,* 37 Minn. 322; *Welcome* v. *Town of Monticello,* 41 Minn. 136; *Bradish* v. *Lucken,* 38 Minn. 186.

The village was then a part of the township and liable and responsible for the debt thus created. The property within the village was subject to taxation for the payment of this bonded indebtedness, and while Sauk Centre remained a village the authority of the township officers extended over it to assess the property therein and collect the taxes therefrom in common with all of the other property of the town with which to discharge such indebtedness. *Bradish* v. *Lucken,* 38 Minn. 186.

Sp. Laws 1885, ch. 296, was constitutional and valid. It was within the power of the Legislature to pass it. The Legislature, under its power to levy taxes, can apportion the public burdens among all tax paying citizens of the state or among those of a particular section or political division. Restraints on the legis-

lative power must be found in the constitution of the state, or there is no constraint on Legislative discretion. *Mayor* v. *Tenth National Bank,* 111 N. Y. 46; *Town of Guilford* v. *Supervisors Chenango Co.,* 13 N. Y. 143; *Fuller* v. *County of Morrison,* 36 Minn. 309; *United States* v. *Railroad Co.,* 17 Wall. 322; *Coles* v. *County of Washington,* 35 Minn. 124; *Lamb* v. *Connolly,* 122 N. Y. 531.

If there existed upon the village of Sauk Centre any obligation legal or moral to pay a part of this bonded indebtedness, it was competent for the Legislature to apportion it and make its due proportion a direct liability of the village municipality. *Fuller* v. *County of Morrison,* 36 Minn. 310; *Wrought Iron Bridge Co.* v. *Attica,* 119 N. Y. 211; *Brewster* v. *City of Syracuse,* 19 N. Y. 116; *Creighton* v. *San Francisco,* 42 Cal. 446; *Coles* v. *County of Washington,* 35 Minn. 124; *Gas Light Co.* v. *Clark,* 95 U. S. 644; *Weismer* v. *Village of Douglas,* 64 N. Y. 97.

The objection that it does not appear upon the face of the bonds that they were issued by the supervisors in obedience to Sp. Laws 1879, ch. 143, § 4, is absolutely without force. *Oregon* v. *Jennings,* 119 U. S. 74; *Marcy* v. *Town of Oswego,* 92 U. S. 637; *Insurance Co.* v. *Bruce,* 105 U. S. 328.

Objection is made to the title of Sp. Laws 1885, ch. 296. We submit that the title is comprehensive and fairly states its subject. *State* v. *Cassidy,* 22 Minn. 312; *State* v. *Klein,* 22 Minn. 328; *Coles* v. *County of Washington,* 35 Minn. 124.

When the village was reorganized as a city the latter became liable for the debts of the former. The new corporation is deemed the same corporate body as the old, reorganized, clothed with new powers, a new charter; but is still the same municipal corporation. *Knight* v. *Ashland,* 61 Wis. 233.

MITCHELL, J. This action was originally brought against the town of Sauk Centre alone, but subsequently, on motion of the town, neither the plaintiff nor the city objecting, the city of Sauk Centre was made a party defendant, and plaintiff amended his complaint accordingly. The defendant city demurred to the complaint, on the ground that it did not state a cause of action. From an order overruling this demurrer the city appealed.

Stated in chronological order, the allegations of the complaint are as follows: The town of Sauk Centre was a duly-organized township in the county of Stearns. The village of Sauk Centre, situated within the town, was organized as an incorporated village under Laws 1875, ch. 139, and Sp. Laws 1876, ch. 16, and so continued until the incorporation of the city of Sauk Centre, in 1889. In December, 1882, the town, in pursuance of the provisions of Sp. Laws 1879, ch. 143, issued to the Little Falls & Dakota Railroad Company its bonds to the amount of $12,000, which were afterwards sold and transferred to the plaintiff, and upon which he brings this action.

In 1885 the legislature passed an act (Sp. Laws 1885, ch. 296) entitled "An act to provide for the payment of the bonded indebtedness of the town of Sauk Centre incurred by said town by the issue of its bonds prior to the year 1883 and to apportion said indebtedness between the present town of Sauk Centre and the village of Sauk Centre." The provisions of this act were that the bonded indebtedness of the town incurred by the issue of its bonds prior to 1883 should be apportioned and made chargeable to and payable by the town as then constituted, and by the village pro rata in the proportion that the valuation of taxable property of the town and village, respectively, shall bear to the entire valuation of the taxable property of the town and village collectively, said valuation to be determined by the general tax assessment list last preceding the time when the several installments of principal and interest upon such bonds become due and payable; and that the payment of such proportionate shares thereby apportioned should be provided for, and paid by, and be recoverable against, the town and village, respectively, as they become due, in the same manner as other debts of the town and village, respectively, were by law provided for, made payable and recoverable.

In March, 1889, the city of Sauk Centre was incorporated by Sp. Laws 1889, ch. 4. The city included the whole of the village, and 880 acres which were outside the village, but within the town.

This act provided that upon the election and qualification of the city officers in April, 1889, the village corporation should cease, and thereupon the city should succeed to, and become vested with

and the owner of, all the property and rights of action which belonged to the village, and should be and become liable for all the debts, obligations, and liabilities then existing against the village for any cause or consideration whatever, in the same manner and to the same extent as if originally contracted or incurred by the city.

1. The allegations of the complaint are full to the effect that the bonds were duly issued by the town by virtue of and in accordance with the provisions of Sp. Laws 1879, ch. 143. Whether, in case these allegations are untrue, the recitals in the bonds are sufficient to estop the town or city from asserting the fact against a *bona fide* purchaser for value and before maturity, is a question not here involved, and hence need not be considered.

2. An examination of the acts under which the village was organized will show that, according to the repeated decisions of this court in similar cases, it remained a part of the town for all purposes, except the village purposes provided for in the acts. The property within the village was subject to taxation for the payment of these bonds in the same manner and to the same extent as any other property in the town. *Bradish* v. *Lucken*, 38 Minn. 186, (36 N. W. 454.)

3. Inasmuch as this condition of things still continued, it is not apparent what was the particular necessity for the enactment of the law of 1885. But the meaning and effect of that act are quite clear. It did not and could not affect or change the rights of the holders of the bonds against the town. But, as between themselves, it practically made the village and the remainder of the town two separate and distinct districts as respects liability for and the payment of all outstanding bonds of the village issued prior to 1883, and apportioned this indebtedness between the two in the ratio of the taxable property within their respective limits. Under this act, the village would be liable to the holders of the bonds to the extent of the amount apportioned to it; and, if the town (outside of the village limits) was compelled to pay more than its share, it could have recovered it back from the village. The power of the legislature to do this is undoubted. The village was a part of the town which issued the bonds. All the property within its limits was liable to taxation for their pay-

ment.    The part apportioned to the village did not impose any materially greater burden of taxation upon the property within its limits than it was already subject to.    The right of the legislature, in all cases not within any constitutional inhibition, to create, alter, divide, or abolish all municipal corporations, and to make such division and apportionment of the corporate property and debts of old corporations, in case of a division of their territory, as the legislature may deem equitable, is well settled.    *State ex rel.* v. *City of Lake City*, 25 Minn. 404; *City of Winona* v. *School Dist. No. 82*, 40 Minn. 13, (41 N. W. 539.)

And it can make no difference whether the legislature divides the old corporation only for a particular purpose or for all purposes.    The intention of the act of 1885 to make the village, as a municipal corporation, liable for the designated proportion of the town bonds, is very clear; and, as we construe its provisions, there is no ground for the contention that the holders of the bonds could not recover against the village, but that it would only be liable over to the town.    The fact that the city includes 880 acres more than the village neither alters the law of the case, nor involves any practical difficulty.

The liability of the village being established, the liability of the city, as its successor, under the act of 1889, is too clear to require argument.

In case the plaintiff establishes his cause of action, he will be entitled to judgment against the town by virtue of its contract for the full amount of the bonds,—and against the city, by virtue of the acts of 1885 and 1889, to the extent of its proportionate share, as fixed by the act of 1885.    There is nothing in the point that the act of 1885 violated the Constitution, Art. 4, § 27.    Neither is there anything in the objection that it is a legislative exercise of judicial power.    It does not assume to pass upon the validity of any outstanding bonds of the town.    If there are any such which were not a valid indebtedness of the town, that defense is still available to both the town and the city.

Order affirmed.

GILFILLAN, C. J., absent on account of sickness; took no part.

(Opinion published 61 N. W. 330.)