## A. D. INGERSOLL v. TOWN OF DEER RIVER.[1]

May 22, 1914.

Nos. 18,565—(57).

**Village — liability for road debts of town.**

> *Held*, following Bradish v. Lucken, 38 Minn. 186, and State v. Peltier, 103 Minn. 32, that property within a village organized under Laws 1885, c. 145, is not, either before or after its separation from the township, liable to be taxed for the payment of indebtedness incurred by the township for township roads and bridges. Love v. Town of Preston, 112 Minn. 459, distinguished.

[1] Reported in 147 N. W. 439.

Action in the district court for Itasca county by a taxpayer of the village of Deer River to enjoin the defendant auditor of Itasca county from drawing his warrant upon the county treasurer for any part of the funds derived from the taxes upon the property within defendant village of Deer River and from paying any part thereof to defendant town of Deer River or any of its bondholders, and to enjoin defendant county auditor from levying upon the taxable property of the village of Deer River as part of the taxes for the year 1913 any amount whatever for the purpose of providing a sinking fund for the bonded indebtedness mentioned in the opinion. The case was tried before Stanton, J., who made findings and ordered a permanent writ of injunction in favor of plaintiff and commanding the payment to defendant village of all such funds. From the judgment entered pursuant to the order, defendant town appealed. Affirmed.

*H. W. Stark* and *C. C. McCarthy,* for appellant.
*Thwing & Rossman,* for respondent.

BUNN, J.

The town of Deer River is a duly organized town in Itasca county, and the village of Deer River is a duly organized village whose corporate limits are wholly within the boundaries of the town. On September 1, 1906, the town issued road and bridge bonds to the amount of $12,000, which are still unpaid. These bonds were authorized by a town election held in a school house within the limits of the town and outside of the village limits. At this election 30 votes were cast, all in favor of the issuance of the bonds; of these votes, 23 were cast by residents of the town who lived outside of the village; four were cast by residents of the village, and three by persons whose residence was not disclosed by the evidence. The bonds were issued and sold, and the proceeds used exclusively for road and bridge purposes of the town entirely outside of the corporate limits of the village, except that a portion of the proceeds was used under the exclusive direction of the town board in the construction of a road, part of which traverses the west line of the village limits. The village council of the village took no part in the con-

struction of such road, or any road constructed by the town with the proceeds of the bonds. The town has always paid the interest on the bonds.

On November 6, 1906, the village of Deer River was separated from the town for election and assessment purposes, under the provisions of R. L. 1905, § 708, and has since then been a separate election and assessment district. Upon such separation, the county auditor of Itasca county attempted to apportion between the town and the village the bonded indebtedness before mentioned, using the assessed valuation of the taxable property in each as a basis. This valuation was $92,136 for the property within the village limits, and $71,153 for the property without these limits. Each year thereafter, without the knowledge or acquiescence of the village or its officers or taxpayers, the auditor levied and collected taxes upon the property in the village for the purpose of paying the village's proportion of the bonded indebtedness and interest. Of the taxes thus collected the sum of $1,047.35 was paid over to the village, and $2,679.48 subsequently collected was paid to the county treasurer of Itasca county and was in the county treasury at the time this action was tried.

Plaintiff is a property owner and taxpayer in the village. He brought this action to enjoin the defendant Spang, county auditor of Itasca county, from drawing his warrant upon the treasury for any part of the funds therein realized from the taxes levied on property within the village, to enjoin him from paying such funds or any thereof to the town of Deer River or to the bondholders, to enjoin the levy of taxes for 1913 and subsequent years upon property in the village to pay or provide a sinking fund to meet any of such bonds or interest, and to compel him to pay to the village the fund above specified, and all other funds coming into the treasury as proceeds of the taxes levied upon village property to pay the bonds or interest. The auditor was made a defendant, as was the town of Deer River and the village. The town answered, opposing the relief asked, while the village joined in the prayer of plaintiff. The decision of the trial court was that plaintiff and the village were entitled to the relief

demanded in the complaint. Judgment was entered accordingly, and the town of Deer River appealed therefrom to this court.

A single question is presented on this appeal. Was property within the corporate limits of the village subject to taxation to pay any portion of the bonds issued by the town? All other questions, such as whether the remedy is the proper one, and whether the village is, in any event, entitled to have paid to it the funds raised from the taxation of the property of its residents, are eliminated by agreement of counsel, as well as by the failure of appellant to raise any such questions in its brief.

The bonds were issued by the town pursuant to authority conferred at a town election, and the proceeds were used exclusively for road and bridge purposes of the town under the direction of the town board. The fact that four residents of the village voted at the town election is not material, nor is the fact that part of the proceeds went to construct a road on the boundary between the town and the village. The question whether property within the village may be taxed to pay part of the indebtedness created by the town in issuing its bonds was decided in the negative in Bradish v. Lucken, 38 Minn. 186, 36 N. W. 454, and State v. Peltier, 103 Minn. 32, 114 N. W. 90. It is vigorously and ably argued by counsel for appellant that these decisions do not apply to the facts here, that they are in effect overruled by Love v. Town of Preston, 112 Minn. 459, 128 N. W. 673, and that, if they do apply and have not been overruled, the cases were wrongly decided and should be now overruled.

Bradish v. Lucken was decided in 1888, prior to the enactment of chapter 52, p. 58, Laws 1897, and chapter 124, p. 260, of the same laws, providing that any incorporated village situated in one or more townships may be made a separate election and assessment district and separated from the town in which it is situated, "for all purposes." See also section 708, R. L. 1905; Laws 1911, p. 195, c. 154. The village of Fisher, within the town of Fisher, had been reincorporated under the provisions of Laws 1885, p. 148, c. 145. (The village of Deer River was organized under the same law.) It was held that the village still remained liable for its proportion of the general township indebtedness previously incurred, and also for

its proportion of certain town charges for general township purposes, but that, in respect to roads and bridges, the township officers had no jurisdiction or authority within the limits of the village, and that the latter was not liable to be taxed for the expenses of township roads and bridges.

State v. Peltier was decided in 1907. The village of Staples was organized within the territorial limits of the town of Staples, pursuant to Laws 1885, p. 148, c. 145. In 1902, pursuant to Laws 1897, chapters 52, 124, the village was separated from the town and became a separate election and assessment district. In June, 1900, the voters of the town, including those in the village, voted to issue bonds, the proceeds to be used in building and repairing roads and bridges of the town. The bonds were issued, and it was attempted to levy a tax upon the taxable property in both the town and the village to pay such bonded indebtedness. It was held, following Bradish v. Lucken, that prior to the separation from the town in 1902, the village was not liable for the payment of any part of the road and bridge bonds. It was further held that there was no statute that undertook to impose upon the village a liability for any part of the township indebtedness for which it was not liable before the separation. Laws 1897, p. 59, c. 52, § 3, then in force, provided, in case of the separation of villages from towns, that if the village and the town had theretofore jointly or together contracted any bonded or other indebtedness, the county auditor should apportion the taxes to meet such indebtedness between the taxable property of the town and village respectively. It was decided that this statute manifestly referred to indebtedness for which the village was liable before the separation; that is, to indebtedness contracted for municipal purposes other than for roads and bridges.

It is clear that the Bradish and Peltier cases are applicable to the facts in the present case unless the language of section 710, R. L. 1905, makes a village, upon separation from the town, liable for a proportion of the town indebtedness incurred for road and bridge purposes. It is true that section 710 is worded differently from chapter 52, § 3, p. 59, Laws 1897, in that it requires the auditor to apportion the "bonded indebtedness of such town" between the town

and the village, instead of requiring him to apportion the taxes to meet bonded indebtedness contracted by the town and village "jointly or together." But the language should not be construed as making a village liable for town bonds issued for exclusively town purposes. The bonded indebtedness of the town is to be apportioned only when the village, before the separation, was liable for a portion of it. To create a liability on the part of the village to pay the debt of the town would need clearer language than that employed in the section referred to. We therefore hold that the Bradish and Peltier cases are directly in point.

Does the case of Love v. Town of Preston, 112 Minn. 459, 128 N. W. 673, impliedly overrule the Bradish and Peltier cases? The village of Preston was organized under Sp. Laws 1889, p. 612, c. 35, and was composed of territory a part of which was in each of the four defendant townships. The immediate question was, as stated by Mr. Justice Jaggard, whether the defendant township had authority to vote or levy taxes on property within the corporate limits of the village of Preston for the construction and maintenance of roads and bridges within the township, but beyond the city limits. This question, in substance the same as that in this case, and in the Bradish and Peltier cases, was decided in the affirmative. The decision was based upon the following language in the charter of the village: "The citizens incorporated by this act shall be and remain citizens of the townships in which they reside, respectively, for all township purposes in addition to the powers and privileges conferred by this act." It was held that under this charter provision the citizens of the village remained citizens of the township, with the privilege of voting for the imposition of road and bridge taxes upon the township, and of representation upon the town board, and that with this privilege went also the the responsibility for the taxes imposed. Bradish v. Lucken was distinguished because there was no charter provision corresponding to the one above quoted. The Peltier case was not referred to. It is clear that the decision in the Love case was based entirely upon the quoted provision in the village charter. As stated in the opinion, there is nothing in Laws 1885, p. 148, c. 145, or in the general law, corresponding to such provision. The case

is clearly distinguishable from the prior cases, is not inconsistent with and does not overrule them.

Counsel makes a strong argument to show that the Bradish and Peltier cases were wrongly decided, and should be now overruled. We have carefully considered the points made, with the conclusion that we ought not now to change what has been the settled law on the subject for 25 years. We do not indicate what our decision would be were the question a new one.

Judgment affirmed.