IVER I. ODEGAARD *vs.* CITY OF ALBERT LEA.

May 8, 1885.

**Support of the Poor in Albert Lea—"Town" includes Incorporated City.**—The word "town," as used in Sp. Laws 1875, c. 74, entitled "An act to make paupers a town charge in Freeborn county," includes incorporated cities. Under this act it is the duty of the city of Albert Lea to support its own poor.

Plaintiff brought this action to recover the value of services, support and care, rendered and furnished in attending and caring for a pauper who was a resident of defendant. Upon the trial in the district court for Freeborn county, before *Farmer,* J., the action was dismissed, for the reason, as stated by the court, that there was no obligation on the defendant to care for its poor. Plaintiff appeals from an order refusing a new trial.

*John Anderson,* for appellant.

*W. E. Todd,* for respondent.

MITCHELL, J.[1]  The question here is whether the city of Albert Lea is required by law to care for its own poor.  By the general law of the state the maintenance and relief of the poor is made a county charge.  Gen. St. 1878, c. 15.  But in 1875 a special act was passed making paupers a town charge in Freeborn county.  Sp. Laws 1875, c. 74.  This act required each town in that county to take care of and bear the expense of its own poor in the same way and manner, so far as applicable, as was provided for counties taking care of the poor, and made the township boards of supervisors supervisors of the poor in their respective towns, and required them to take charge of such poor to the exclusion of the county commissioners of that county. This act does not mention cities *eo nomine*.  The words used are "town" and "township."  These two words are used interchangeably, as being synonymous; the latter evidently meaning, not the territory or district, but the municipal organization commonly and more accurately called a "town."

By Sp. Laws 1878, c. 1, a district of territory previously a part of the town of Albert Lea, in the county of Freeborn, was constituted the city of Albert Lea, and its inhabitants incorporated as a municipal corporation.  This act of incorporation grants the powers and imposes the duties usually granted to or imposed upon cities, but is silent upon the subject of the support of the poor.

Under our political system the town in the rural districts, and the city or incorporated village, when necessary by reason of the number or density of population, constitute the unit of political organization. The city or village bears substantially the same relation to the state government, and has substantially the same functions of local government, as the town.  Indeed, a city is but an incorporated town, with such special powers and special mode of government as the circumstances of the case require.  But even then the general laws in relation to *towns*, when not inconsistent with provisions of the act of incorporation, ordinarily apply to places specially incorporated.  1 Dill. Mun. Corp. § 28.  Our statute expressly provides that each incorporated city shall have and exercise within its limits, in addition

[1] Berry, J., was absent and took no part in this case.

to its other powers, the same powers conferred upon towns. Gen. St. 1878, *c.* 10, § 112. Hence the word "town" is often used as a generic term, embracing all such primary municipal corporations as incorporated cities and villages; and, independently of any statutory provision, it has become a well-settled rule of construction that the term "town," when used in a general statute, may include cities, unless the contrary appears from the whole statute to have been the intent of the legislature. 1 Bl. Comm. 114; *Road in Milton,* 40 Pa. St. 300; *Board of Com'rs* v. *McGurrin,* 6 Daly, 349; *Peck* v. *Weddell,* 17 Ohio St. 271; *State* v. *Glennon,* 3 R. I. 276; *Flinn* v. *State,* 24 Ind. 286; Abb. Law Dict. "Town." This rule of construction is in this state expressly adopted by statute. "The word 'town' may include cities and districts, unless such construction would be repugnant to the provisions of any act specially relating to such cities or districts." Gen. St. 1878, *c.* 4, § 1. We have in this state the three classes of primary political divisions,—towns, cities, and incorporated villages; and that the first only of these is meant by the word "town" may, in a given case, be apparent from the purpose of the statute. But that is not the case here.

This act of 1875 was evidently intended to apply to the whole county of Freeborn. The care and maintenance of the poor is a governmental duty, recognized and assumed by this and every other civilized state, upon the highest considerations of political policy as well as of common humanity. It evidently was never the intention to leave the poor in the cities and incorporated villages of Freeborn county without any provision for their care and maintenance. The sole purpose of the act was to change the mode of supporting them, and, instead of making it a county charge, as in other parts of the state, to impose this duty upon the several primary municipal organizations into which that county was or might be divided for purposes of local government. The word "town" or "township" is manifestly used in the act as a generic term, and includes incorporated cities. In these the provisions of the law must be executed by the body corresponding to the board of supervisors in the rural towns, which, in the present case, is the common council.

As the "case" does not purport to contain all the evidence, we think

v.33*m*—23

this is the only question before us.    It was the only one passed upon by the court below.

Order reversed.