MICHAEL WELLCOME *vs.* TOWN OF MONTICELLO.

June 27, 1889.

Villages in Wright County—Support of Poor.—Under Sp. Laws 1887, c. 90, declaring the support of the poor in villages in Wright county a village charge, and making the provisions of Sp. Laws 1878, c. 215, applicable to villages, the support of existing paupers devolved upon the village in which they had a legal residence or settlement at the time of the passage of the act.

Same—Settlement.—And every person, at that time receiving aid from a town, and being maintained elsewhere than in the place of his actual residence at the time of becoming a pauper, is to be deemed to have a legal settlement in the village in which he actually resided when first making application for public support.

Appeal by plaintiff from a judgment of the district court for Wright county, where the action was heard by *Rea*, J., on testimony taken by a referee.

*James C. Tarbox*, for appellant.

*Koon & Semple*, for respondent.

MITCHELL, J. The villages of Monticello and Moritzious are incorporated under the general laws of the state, each out of a portion of the territory of the town of Monticello, in Wright county. One Patterson was, for many years, a resident of that portion of the territory of the town afterwards incorporated as the village of Monticello, and, after such incorporation, continued to reside there until he became a pauper, in 1883, since which time, down to June, 1888, he has been continuously supported as a pauper in the village of Moritzious. From and subsequent to March 2, 1887, down to June, 1888, not being supported by the municipality chargeable with his support, he was cared for and supplied with necessaries by the plaintiff, who sues the town therefor. The question is whether it is liable.

Sp. Laws 1878, *c.* 215, made paupers in Wright county a town charge, section 5 providing that the supervisors of the several towns should have the care, custody, and superintendence of the poor in their respective towns. Section 4 provided that "any person, other than those hereinafter mentioned, who has resided in either of the towns of said county one year continuously, shall, for the purposes of this act, be deemed to have gained a legal residence in said town." Section 13 provided that "any person receiving aid from the said county at the time this act takes effect, residing or being maintained in any of the towns of said county other than the town which was their actual residence when becoming paupers, shall, for the purposes of this act, be deemed and considered to have a legal settlement in the town in which he or she actually resided when first making application to the county for public relief or support." Chapter 90, Sp. Laws 1887, (approved February 25,) amended this act by adding to section 5 "and the village councils of the several incorporated villages of said county shall, by virtue of their office, have the care, custody, and superintendence of the poor in their respective villages," and fur-

ther provided that all the provisions of the original act, "and of each and every section thereof," should apply with equal force and effect to the several incorporated villages of the county as to the towns thereof. We have frequently held that villages remain a part of the town in which they are situated for all town purposes, except so far as otherwise provided for in the general village law, or the statute constituting the village charter. *Moriarty* v. *Gullickson,* 22 Minn. 39; *Bannon* v. *Bowler,* 34 Minn. 416, (26 N. W. Rep. 237;) *State* v. *Fitzgerald,* 37 Minn. 26, (32 N. W. Rep. 788;) *State* v. *Spaude,* 37 Minn. 322, (34 N. W. Rep. 164;) *Bradish* v. *Lucken,* 38 Minn. 186, (36 N. W. Rep. 454.) Inasmuch as the support of the poor was not included in either the powers or duties of villages under the general village law, it follows that the support of Patterson until February 25, 1887, was a charge upon the town of Monticello. The case of *Odegaard* v. *City of Albert Lea,* 33 Minn. 353, (23 N. W. Rep. 526,) is not in conflict with this view, because incorporated cities are not a part of the town for any purpose, being expressly excepted from the provisions of the township act, and being given, in addition to their other powers, those conferred on towns. Gen. St. 1878, c. 10, § 112.

In 1878, when the support of the poor in Wright county was changed from a county to a town charge, the legislature adopted the policy of making each township chargeable with all the poor who had a residence or legal settlement in its territory at the time of such change, and further provided that those paupers who were being maintained by the county, at the time of the change, in any town other than those which were their actual residences when they became paupers, should be deemed to have a legal settlement in the town in which they resided when first making application for public support. This was in harmony, not only with the general policy of all poor laws, but also with common sense and common justice, that each municipality should be chargeable with the support of all paupers having a legal residence or settlement within its territory, and that, in case of a division or change of boundaries, such poor would pass with the territory in which they at the time had such settlement. The provision regarding paupers supported by the county, at the time of the change of the law, in some

other town than that in which they had their residence when they became paupers, was adopted upon the principle and theory that such persons had not moved of their own volition, but were placed where they were by the public authorities for their own convenience, and, therefore, their municipal relation remained unaffected by the removal, and that they gained no legal residence or settlement in the place where they were being boarded by the overseers of the poor.

In 1887, when the further change was made of making villages "poor-districts," and placing them, as to that matter, on the same footing as towns, the legislature, by making all the provisions of the act of 1878 applicable with equal force and effect to villages as to towns, has clearly expressed the intention that the support of the existing poor should pass to the respective towns and villages, in accordance with their actual residence or settlement, in the same manner and in accordance with the same rules as governed the matter in 1878, when their support was transferred from the county to the towns; also that the question of residence or settlement at the time of the change should be controlled by the same principles. Whatever difficulty may exist in making the machinery provided in the act of 1878, for the determination of the question of fact of residence or settlement, applicable to the act of 1887, there can be none in the application of the rules or principles which are to govern.

In support of his contention, appellant invokes the doctrine of *State* v. *City of Lake City,* 25 Minn. 404, and of *City of Winona* v. *School-Dist.,* 40 Minn. 13, (41 N. W. Rep. 539,) that, in case of the change of the boundaries of a municipal corporation, or the erection of a new one out of part of its territory, all corporate liabilities and property remain upon and belong to the old corporation; and, as holding that this rule applies to the liability to support existing paupers, he cites *Windham* v. *Portland,* 4 Mass. 384. Inasmuch as, according to our construction of these statutes, the legislature has otherwise provided, we have no occasion to enter into a discussion of this question; but we may suggest that, in our opinion, there is no analogy between the right to or ownership of corporate property, or the lia-

bility for a corporate debt, and a continuing political or municipal duty, like the support of the poor, which a municipality owes to its own citizens; and, therefore, we think that, in the case cited, the rule of law was perhaps incorrectly applied.

It follows, from what we have said, that the town of Monticello was not liable for Patterson's support after February 25, 1887, but that this devolved upon the village in which he had his legal residence or settlement at that date, which, according to the provisions of the act of 1878, made applicable to villages by the act of 1887, would be the place where he actually resided in 1883, when he first became a public charge.

Judgment affirmed.