## CITY OF MANKATO v. BARBER ASPHALT PAVING CO.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1905.)

No. 2,196.

1. WRIT OF ERROR—REVIEW—ACTION TRIED TO COURT.

Where a jury is waived by stipulation in a circuit court pursuant to Rev. St. §§ 649, 700 [U. S. Comp. St. 1901, pp. 525, 570], and no special finding of facts is made, the only questions reviewable by the Circuit Court of Appeals are whether the judgment is supported by the pleadings, whether there is any substantial evidence to support it, and whether error was committed in the admission or exclusion of evidence.

2. MUNICIPAL CORPORATIONS—ACTION AGAINST—CONDITIONS PRECEDENT.

Gen. St. Minn. 1894, § 687, which provides that, before any account, claim, or demand against any town or county for any property or services shall be audited or allowed, it shall be reduced to writing in items, verified, etc., which under the decisions of the Supreme Court of the state creates a condition precedent to any action on any such claim or demand, contemplates such claims only as can be itemized, and it has no application to a claim for damages for failure to perform a statutory duty as by the refusal of the council of a city to levy a special tax to pay for street improvements for which it contracted.

3. SAME—CONTRACT FOR STREET IMPROVEMENT—LEGALITY.

A temporary injunction restraining a city from entering into any contract for the improvement of a street, whereby any pecuniary liability will be incurred by or in behalf of said city for any of said improvement which will necessitate the payment or expenditure of any of the current funds of said city whatever, save and except such as can be lawfully raised by special assessments made on property benefited other than property belonging to the city, did not render invalid a contract for the improvement which imposed no liability for its cost upon the city, but expressly provided that it should be paid for out of money lawfully raised by special assessment on property other than that owned by the city.

4. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

A decision of the highest court of a state, holding a contract made by a city void upon the facts shown, and not upon a construction of the local statutes, is not conclusive upon a federal court, nor in any event where the rights of the plaintiff in the federal court under the contract were fixed prior to such decision to which it was not a party.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 950, 962.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

5. JUDGMENT—PERSONS CONCLUDED.

Where a contractor with a city was not a party to a suit brought against the city to have such contract adjudged void, it is not bound by the judgment therein because it had knowledge of the suit, nor because it agreed to, and did, pay the fee of an attorney selected and employed by the city to assist in the defense.

[Ed. Note.—For cases in point, see vol. 30, Cent. Dig. Judgment, §§ 1230–1233.]

6. SAME—TWO ACTIONS PENDING—STATE AND FEDERAL COURTS.

The pendency in a state court of an action between the same parties involving the same issues is not ground for abatement of a subsequent action brought by the defendant therein in a federal court, where no conflict arises between the courts over the custody or dominion of specific property; nor is the defendant therein concluded by a judgment against

him rendered after he has recovered a judgment in his favor in the federal court.

[Ed. Note.—Pendency of action in federal or state court ground for abatement of action in the other, see note to Bunker Hill & Sullivan M. & C. Co. v. Shoshone M. Co., 47 C. C. A. 205.]

7. MUNICIPAL CORPORATIONS—CONTRACTS FOR IMPROVEMENTS—VALIDITY.

The decisions of the Supreme Court of Minnesota that a city of that state, required by its charter to let contracts for public improvements to the lowest responsible bidder in accordance with plans and specifications previously on file, has no power to enter into a contract with a bidder containing substantial provisions beneficial to him not included in or contemplated by the terms and specifications upon which the bids were invited, do not render invalid a contract because of departures from the specifications in matters not substantial, or where the departure is not for the benefit of the contractor.

8. SAME—CONTRACTS FOR IMPROVEMENTS—VARIATIONS FROM SPECIFICATIONS.

A reasonable degree of latitude essential to an intelligent and practical administration of public affairs is allowed in matters of detail, involved in the execution of powers clearly conferred by fundamental law.

9. SAME—LIMITATION OF INDEBTEDNESS—CONTRACTS CREATING A DEBT.

A contract by a city for a street improvement, which binds the city only to levy and collect a special assessment on abutting property to pay the cost, as required by statute, does not create an indebtedness against the city, within the meaning of a statute fixing the limit of its permissible indebtedness; nor is an action to recover a judgment against the city for the amount of the contract price because of its refusal to levy and collect such special assessment one founded on a debt, but it is one sounding in tort, the liability of the city arising out of its refusal to perform a statutory duty.

[Ed. Note.—Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.]

In Error to the Circuit Court of the United States for the District of Minnesota.

On February 21, 1902, the common council of the city of Mankato, Minn., plaintiff in error, adopted a report of its committee on streets to the effect that public necessity required that Broad street, from Lincoln to Pine streets, should be paved with asphaltum, 30 feet in width, and that the street should be otherwise improved by curbing and guttering; and, pursuant to the requirement of the charter of the city, referred the matter to the board of public works. On March 7, 1902, the board reported back to the council that the proposed improvement was proper and advisable, and accompanied its report with a profile and specifications of the work. The council, on March 7th, adopted the report of the board, and by resolution directed the board to advertise for bids according to law. This was done. Bids were required to be made for doing the work "according to plans, profiles and specifications on file in the office of the clerk of the board." On April 2d, the date specified in the advertisement for the submission of bids, the board met and opened the bids, but owing to a temporary restraining order next referred to, took no further action. On April 1st, one Diamond, a taxpayer, and owner of property along Broad street, instituted an action in a state court of competent jurisdiction against the city, its aldermen and the board of public works, in which, on April 17th, a restraining order was made as follows: From "entering into any contract for the boulevarding, curbing, guttering or paving Broad street, in the city of Mankato, or issuing the orders, bonds, certificates of indebtedness, or other obligations of said city, whereby any pecuniary liability will be incurred by, for, or in behalf of said city of Mankato, for any of said improvement which will necessitate the payment or expenditure during the fiscal year A. D. 1902, or any of the following fiscal years, of any of the current funds of said city whatever, save and except such as can be lawfully

raised by special assessments made upon real estate and property benefited by said improvements other than real estate and property belonging to said city of Mankato." This restraining order was duly served on all the defendants in that case, on or prior to April 23d. The Barber Asphalt Paving Company, the defendant in error, was not a party to that action. This company was the lowest bidder for the work contemplated, and on April 23d a formal contract was entered into between it and the city for doing the work in accordance with the terms of the bid and the requirements of the plans, profiles, and specifications which were attached to and made part of the contract. The specifications upon which bids were solicited and received from all bidders (including the Barber Company) contained the following provision: "Payments for said improvement shall be made not earlier than one hundred and twenty days (120) after the completion and acceptance by the board of public works of said work, out of moneys received from the assessment duly made for said improvement in accordance with the charter of said city, or such other moneys as may be set aside by the common council of said city for the payment of same, and if at the expiration of the said one hundred and twenty days after the acceptance of said contract there is not sufficient money in the treasury of said city applicable to the payment of said contract, certificates of indebtedness bearing interest at the rate of six per cent. per annum may be issued in payment of any sum due said contractor in accordance with the provisions of section 28 of subchapter 6, of chapter 47, p. 429, Special Laws of 1891 of the State of Minnesota." By reason of the restraining order in the Diamond Case the foregoing provision for making payment for the work, by resolution of the board, accepted by the Barber Company, was stricken from the specifications, and in lieu thereof the following was inserted in the formal contract, to wit: "Payments to be made after the completion of the said work and acceptance by the board of public works out of money lawfully raised by special assessment upon real estate and property benefited by said improvement other than real estate and property belonging to said city of Mankato."

The specifications contained the following provision: "The entire work shall be finished by Aug. 1st, 1902. Time being an essential condition of the contract, the contractor shall be charged twenty dollars ($20) per day after the expiration of the contract time, and all expenses of engineering and inspection until the work is accepted by the engineer, and the amount will be deducted from the final estimate."

The formal contract on this subject contained the following provision: "It is understood and agreed that time is of the essence of this contract, and that the whole of said pavement, curbing, guttering, boulevarding, and other improvements shall be finished and completed to the acceptance and satisfaction of the board of public works of said city of Mankato on or before August 1, 1902, and that for each and every day the work herein contemplated shall remain incomplete and unfinished according to the terms and conditions hereof after the time above mentioned, the said party of the first part hereto shall and will pay to the said party of the second part hereto the sum of twenty dollars per day as the fixed and liquidated damages suffered and sustained by said party of the second part hereto by reason of and on account of such failure and delay * * * provided such failure or delay is not through unavoidable causes; the work at all times to be under the supervision of the city engineer of the party of the second part hereto."

The specifications contained the following provision: "The contractor will be required to keep the same in good and sufficient repair for a period of ten years from date of acceptance of the board of public works. * * * If during that period it is found that the pavement is defective from over-burning or improper mixing of material or any other cause, or that the work has been done in an unskillful manner, the contractor shall, at his own cost and expense, upon an order of the board of public works, or other proper authority, entirely remove any defective portion of the pavement, and replace the same to the satisfaction of the said board of public works, or other proper authority." The formal contract embodied this same provision with the addition of the word "preventable" immediately preceding the word "cause," so that

the clause of the contract read as follows: "If during that period it is found that the pavement is defective from over-burning or improper mixing of material, or any other preventable cause, * * * the contractor shall," etc.

On April 23d the contract, as made by the board of public works and the Barber Company, was unanimously approved by the city council. The Barber Company began its work under the contract in May, and satisfactorily completed it on August 1, 1902, as required. Diamond, on May 23d, filed a supplemental bill in which he alleged the making of the contract between the city and the Barber Company, certain facts concerning the indebtedness of the city, the variations made in the formal contract from the terms of the specifications, and prayed that the contract be declared void. The Barber Company was never made a party to this suit, but its counsel conferred with counsel for the city, were present in court at the trial and by permission of counsel for the city, were, on one occasion, heard by the court in argument, and fully understood the purpose and object of the suit. The Diamond Case was tried in June, 1902, and on July 16th the state trial court decided the issues in favor of Diamond. An appeal was duly prosecuted to the state Supreme Court, where, on February 27, 1903, the decree of the trial court was affirmed. 93 N. W. 911, 61 L. R. A. 448. On May 9, 1902, Lester Patterson, owner of property abutting Broad street between Warren and Lincoln streets, instituted suit in the state court against the Barber Company, the sole purpose and object of which was to restrain it from performing its contract for three squares on that portion of Broad street lying between Warren and Lincoln streets. A temporary restraining order conforming to the prayer of the bill was granted by the court. No charges were made in the bill assailing the contract as a whole, but only in so far as it contemplated the improvement between Warren and Lincoln streets. While this temporary restraining order was in force, Patterson, on June 30, 1902, filed his supplemental bill, making the city a party defendant and enlarging the scope of his action so as to assail the legality of the contract in toto. He charged, substantially, all the facts found to have been charged in the Diamond Case and prayed a final decree declaring the contract null and void. The city filed its answer to the supplemental bill in due time, justifying the making of the contract. Not till April, 1904, did the Barber Company file its answer to the supplemental bill. It pleaded the facts substantially as found in the complaint in the case now before us, and further averred that on and prior to August 1, 1902, it had performed all the work as contemplated by the contract of April 23, and that in January, 1904, it had commenced this action in the court below to recover from the city. After an unsuccessful demurrer to the replication filed to this answer and on March 3, 1905, the Patterson Case was brought to trial on the merits, resulting in a judgment March 17, 1905, declaring the contract invalid and enjoining the defendants from performing it. An appeal followed to the Supreme Court of the state, where, on September 22, 1905, 104 N. W. 566, after this case was argued and submitted to us, the judgment was affirmed. The city declined to levy assessments to create a fund for paying for the work done by plaintiff and nothing has ever been paid therefor.

This suit is an action at law, instituted in January, 1904. The complaint sets out the facts already detailed concerning the specifications, bids, contract, performance of the work, refusal of the city to levy assessments, and prays judgment for damages in the sum of $40,065.96. The defenses are in substance: (1) That plaintiff did not present the claim sued on to the common council or other municipal body for audit or allowance before instituting this suit. (2) That the contract between the city and the Barber Company was in violation of the injunctive order in the Diamond Case, and for that reason null and void. (3) That the conclusion reached by the Supreme Court of Minnesota in the Diamond Case is binding upon this court in this case. (4) That prior to the commencement of this suit Lester Patterson and others instituted a suit in the state court against the Barber Company and the city, setting forth in their complaint the facts concerning the making and execution of the contract in question, for the purpose of having the same declared null and void, and that it was so declared. (5) That the variations in the formal contract from the exact terms of the specifications on which bids were solicited

avoided the contract. The answer, setting out these variations, charges that they were substantially and greatly to the advantage and benefit of plaintiff and to the disadvantage of defendant city. (6) That the specifications arbitrarily limited bids to Trinidad Asphalt, obtained from Pitch Lake, in the Island of Trinidad or Bermudez Asphalt. (7) That the Barber Company furnished some material and did some work outside of the 20 feet in width provided for in the contract without any authority, for wh'ch it should not receive compensation. The reply filed by the Barber Company puts in issue all the material disputable allegations of the answer. There is no claim that the variations from the specifications made in the formal contract were designed by the parties for any fraudulent purpose or that there was any fraudulent collusion between the city and the Barber Company. Good faith is fully conceded. On these issues the case came on for trial in the court below; a jury was waived by the parties and the court, on October 25, 1904, rendered a general judgment in favor of the plaintiff for $43,128.31. There was no special finding of facts. It is to reverse this judgment that the case is before us on writ of error.

A. E. Clark and C. N. Andrews (C. O. Dailey, on the brief), for plaintiff in error.

Jared How (A. R. Pfau, A. R. Pfau, Jr., and Carl Taylor, on the brief), for defendant in error.

Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A jury having been waived and no special finding of facts requested or made, there is nothing to review except the questions: Whether the judgment as rendered is supported by the pleadings? Whether there is any substantial evidence to support it? And whether error was committed in the admission or exclusion of evidence? Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373; Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Phenix Ins. Co. v. Kerr, 64 C. C. A. 251, 129 Fed. 723, 66 L. R. A. 569; York v. Washburn, 64 C. C. A. 132, 129 Fed. 564. Most of the important facts relied on by defendant city to defeat recovery appear in the pleadings. For this reason we are fortunately able to consider their merits unembarrassed by the rule just stated.

Does the complaint fail to state a cause of action in this: that it fails to show that plaintiff, prior to the institution of the suit, presented to the common council of the city or some other municipal officer or body, its claim on which this action was based, for audit and allowance?

Section 687 of the General Statutes of Minnesota of 1894 enacts as follows:

"Before any account, claim or demand against any town or county of this state for any property or services for which such town or county shall be liable shall be audited or allowed by the board of officers authorized by law to audit and allow the same, the person in whose favor such account, claim or demand shall be, or his agent, shall reduce the same to writing in items, and shall verify the same to the effect that such account, claim or demand is just and true; that the money therein charged was actually paid for the purposes therein stated; that the property therein charged was actually delivered or used for the purposes therein stated, and was of the value therein charged, and that the services therein charged were actually rendered and of the value therein charged."

It is contended that the charter of the city constitutes the common council as the "board of officers" which, within the meaning of section 687, is authorized to audit and allow claims. This contention finds support in section 29, c. 47, subd. 6, of the charter of the city (Laws Minn. 1891, p. 429), which is as follows:

"When the whole work [referring to public improvements] has been completed by such contractor or contractors to the satisfaction of the board of public works, the amount or balance due him or them shall be audited or allowed by the common council of said city and shall be payable out of the money applicable to the payment of such work."

By the provisions of section 4, c. 3, of the charter, the council is required to bring to its assistance in the allowance of claims, the services of the recorder.

The Supreme Court of Minnesota, in construing section 687, has held that in all cases coming within its purview, the presentation of such a claim "to the officers who are vested with the power and authority to audit, adjust and allow the same" is a condition precedent to the right to maintain an action thereon. Bank v. Middletown, 67 Minn. 1, 69 N. W. 471; Board of County Commissioners v. Clapp, 83 Minn. 512, 86 N. W. 775. The controlling question, therefore, is whether the claim sued on in this case falls within the contemplation of the statute. Without expressing any opinion on the question debated at the bar, whether the language of the section "before any claim or demand against any town or county" is sufficiently comprehensive to include claims against cities, we assume from the reasoning of the Supreme Court in Odegaard v. City of Albert Lea, 33 Minn. 351, 23 N. W. 526, it to be so, and proceed to a consideration of the true meaning of the statute and the character of the plaintiff's claim sued on. This statute first refers to "property or services" as alone forming the basis of the account, claim or demand, but the latter part of the section, by necessary implication, seems to provide that such property or services must consist either of money expended, property delivered or services rendered for the municipality, which may, in the usual and ordinary course be the subject of itemization. It obviously refers to "money, property or services" for which the city in the usual course of its administrative operations becomes indebted and for the payment of which it lawfully may and does assume a direct contractual liability. It does not comprehend claims for damages occasioned by the city for failure to perform its duty, like claims for negligence in failing to maintain proper or safe streets or in failing to abate nuisances when required. Such claims, in our opinion, cannot be the subject of itemization or treatment under section 687.

The present action, we think, does not sound in contract, but rather in tort. It is brought, not for the value of the property furnished or services rendered by the plaintiff to the city, but for failure of the city to perform its statutory duty to levy assessments. The complaint counts on a breach of that duty. There is no averment that defendant ever promised to pay the plaintiff for the work done and materials furnished by it. It could not lawfully do so and did not undertake to do so. The contract imposed no obligation upon the city to pay for the work done or for the materials furnished, ex-

cept "out of money lawfully raised by special assessment made upon real estate and property benefited by said improvements other than real estate and property belonging to said city of Mankato," and the charter imposed the duty of making such assessment upon the officers of the city. Further consideration of this question with citation of authorities will be found later when we consider the question whether the contract of April 23d is void because it creates an indebtedness in excess of the statutory limit.

The fact that the measure of damages is the value of work and labor done and materials furnished does not determine the character of the action. Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659. For another reason also, there was no legal necessity for the preliminary submission of plaintiff's claim to the auditing board. The provisions of section 687 were "made in furtherance of a public policy to prevent needless litigation and to save unnecessary expenses and costs by affording an opportunity to amicably adjust all claims against municipal corporations before a suit is brought." Bank v. Middletown, supra; Guthrie v. Olson, 44 Minn. 404, 46 N. W. 853. Prior to the institution of this suit, on July 16, 1902, the city and its officers had been perpetually enjoined from performing the contract of April 23d in whole or in part. The formal presentation of the claim would therefore not have served any of the purposes intended by the law making provision for it. The city could not have paid the demand and thus have saved trouble or expense. The presentation of the claim, in these circumstances, would have been an idle and useless act, and therefore was unnecessary.

Do the interlocutory and final decrees rendered by the state court in the Diamond Case defeat plaintiff's right of recovery in this case? It is sufficient to consider this subject in the three general aspects argued at the bar. First: Was the contract of April 23d executed in violation of the temporary restraining order in the Diamond Case? Second: Is the final judgment in the Diamond Case decreeing the invalidity of the contract of April 23d controlling upon this court? Third: Is the Barber Company by its knowledge of the pendency of the Diamond Case and its participation in the proceedings estopped by the final judgment in that case?

If the contract was made in defiance of the temporary injunction it was void and conferred no rights upon either party executing it with knowledge of the order. Union Trust Co. v. Southern Nav. Co., 130 U. S. 565, 9 Sup. Ct. 606, 32 L. Ed. 1043. It is conceded that defendant, though not a party to that suit, had full knowledge of the scope of the injunctive order prior to making the contract on April 23d. The bill set forth generally all the grounds of complaint now urged against the validity of the executed contract and prayed for a temporary order restraining the city from entering into any contract for making the improvement in question whereby the city should be required to pay any money therefor or whereby the city should be required to issue any certificates of indebtedness in payment thereof. The order as made followed the prayer. It enjoined the city and its officers "from entering into any contract for the boulevard-

ing, curbing, guttering or paving Broad street, in the city of Mankato, or issuing the orders, bonds, certificates of indebtedness or other obligations of said city whereby any pecuniary liability will be incurred by or in behalf of said city of Mankato for any of said improvement which will necessitate the payment or expenditure during the fiscal year 1902, or any of the following fiscal years, of any of the current funds of said city whatever, save and except such as can be lawfully raised by special assessments made upon real estate and property benefited by said improvements other than real estate and property belonging to said city of Mankato." This order seems to have been carefully drawn, not for the purpose of restraining the execution of any contract for the improvement of the street in question, but only to restrain the execution of such contract as would impose a liability upon the city for the payment of its cost. The court, by necessary implication found in the saving and excepting clause of the order, studiously refrained from interfering with the city's right to so contract for the improvement in question as to subject the property benefited to special assessment for its payment. In fact, we think the order was a tacit acknowledgment of the right of the city to make any contract it desired, provided only, that provision for payment should be by special assessment against property benefited by the improvement other than the property of the city. The contract as made did not violate this order. It imposed no pecuniary liability upon the city directly or indirectly. It was obviously made in the light of the order, and with the commendable intent and purpose of complying with it. All the provisions of the specifications relating to the issue of certificates of indebtedness by the city were, by mutual agreement of the parties, stricken out, leaving on the subject of payment, the following clause only:

"The payment for said work to be made after the completion of the same and acceptance by the board of public works of said city out of money lawfully raised by special assessment upon real estate and property benefited by said improvement other than real estate belonging to said city of Mankato."

Is the judgment of the Supreme Court of Minnesota in the Diamond Case, holding the contract of April 23d invalid, controlling upon this court?

In so far as it construes a local law, the charter of the city of Mankato, under certain condition of facts, it is. This is settled by abundant authority, but in so far as it expresses the opinion of the state court on general principles of the law of contracts, or on the evidential value of facts, it clearly is not. As to such questions it is not only the privilege but the duty of this court which it owes to suitors entitled to invoke its jurisdiction, to exercise its independent judgment. Turning now to the opinion in that case, Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L. R. A. 448, we find very little said by way of interpreting the charter of the city. In fact, no new principle is enunciated. The court announced the generally accepted rule in which we fully concur, as follows:

"The law is well settled that where, as in this case, municipal authorities can only let a contract for public work to the lowest responsible bidder, the proposals and specifications therefor must be so framed as to permit free and

full competition. Nor can they enter into a contract with the best bidder containing substantial provisions beneficial to him, not included in or contemplated in the terms and specifications upon which bids were invited. The contract must be the contract offered to the lowest responsible bidder by advertisement."

The court then proceeds to a consideration of the evidence and reaches the conclusion that in making the contract in question, the specifications were departed from in material respects. Such was the finding of the trial court, and the Supreme Court of the state concludes its opinion as follows:

"Upon the whole evidence, we are of the opinion that the finding in question is fairly sustained by the evidence and we accordingly hold that the contract was void."

So it appears that the Supreme Court of the state was not concerned in the construction of a local statute but rather disposed of the case upon the evidence. Such a decision is not of controlling authority upon the federal courts. The plaintiff in the case was not a party to that action. It, a citizen of the state of West Virginia, availed itself of the right conferred upon it by law to submit its controversy to the federal court. We cannot shrink from the responsibility imposed upon us by blindly following the views entertained by any other court concerning the evidential value of some of the facts involved in the present case.

Another sufficient reason for holding that the Diamond Case, even if it were a construction of local law, is not of controlling authority in this case is found in the proof, which shows that all the facts which determine plaintiff's right existed prior to the decision of the Diamond Case. Plaintiff entered into the contract in question on April 23, 1902, began work under it in May, 1902, and finished the work August 1, 1902. The Diamond Case was decided February 27, 1903. In such circumstances the federal courts do not hold themselves bound by the decision of state courts even in the construction of local statutes. Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, 76 Fed. 296; Speer v. Board of County Commissioners, 32 C. C. A. 101, 88 Fed. 749, and cases cited; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Pleasant Township v. Ætna Life Ins. Co., 138 U. S. 67, 11 Sup. Ct. 215, 34 L. Ed. 864.

While a commanding sense of our duty to the parties in this case requires us to make an independent investigation into the facts, we take pleasure in saying that the high character and attainments of the Supreme Court of Minnesota well entitles its conclusion of fact or law to our most serious and respectful consideration. This we have conscientiously given in our deliberations over this case as will more at length appear when we reach a consideration of the merits.

Is the plaintiff estopped by the judgment in the Diamond Case from asserting the validity of the contract in question?

At the outset of the consideration of this question we must bear in mind that the Barber Company was neither a party nor in privity with any party to the Diamond Case. Certainly no recovery was sought against the city, for which, by reason of contract obligation, the Barber Company stood as indemnitor. While the evidence shows

that some consideration was given to the question of bringing in the Barber Company as a party in the Diamond Case, it falls far short of such a notice and such full opportunity to defend as would subject the Barber Company to liability over, or estop it by the final judgment, even if it was liable over. Washington Gas Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712; Oceanic Steam Nav. Co. v. Campania Transatlantica Espanola, 144 N. Y. 663, 666, 39 N. E. 360; Eaton v. Lyman, 26 Wis. 61; Strong v. Phœnix Ins. Co., 62 Mo. 289, 21 Am. Rep. 417. The facts disclosed by this record show that when the Diamond suit was first instituted some members of the city council sought information as to whether the Barber Company proposed to take part in the defense of the suit. On being informed that it did not, they said the city counsellor, Mr. Dailey, ought to have some help. Thereupon the representative of the company said if the city counsellor would select some attorney who would be thoroughly in accord with him, if the city could not stand the expense he would see that the man was paid. Pursuant to this suggestion Mr. Plymat was selected and assisted the city counsellor throughout the litigation. No representative of the company had anything to do with his selection or employment except paying for the services he rendered. There is no evidence that Mr. Plymat or any person other than the city counsellor was given or had any control over the litigation. One of the regularly employed attorneys for the Barber Company was in court during the progress of the trial, and on one occasion, disclaiming any appearance for any party, but stating to the court that he represented the Barber Company in matters which might involve a construction of the contract in question, asked leave to make a statement, which was granted. The foregoing is substantially all the evidence from which the city would now draw the conclusion that the Barber Company is bound by the judgment in the Diamond Case. As against drawing any such conclusion the proof shows that during the progress of the trial of that case, a discussion arose in open court as to the advisability of staying the trial to take steps for bringing in the Barber Company, The trial court gave the city till an hour fixed to ascertain whether it could do so. At that time the representative of the city responded as follows:

"I have not been able to find any one who claims to have authority to appear for the Barber Asphalt Paving Company. Therefore I am unable to do anything."

Not only so, but the attorney for Diamond testifies in this case as follows: That some time during the pendency of the Diamond suit before the trial began, "the quesion came up as to whether or not the plaintiff would make an application to the court to have the Barber Asphalt Paving Company interpleaded, * * * and it was decided by the attorneys for the plaintiff that, in view of the circumstances, they did not feel as though they were justified in having them interpleaded, and I called on Messrs. Pfau & Pfau with reference to getting them to stipulate to come into the case and to have (their client) the Barber Asphalt Paving Company brought in as a party. We talked the matter over several times and we thought it very likely

that the Barber Asphalt Paving Company would be willing to come in upon stipulation." He testifies that Pfau & Pfau said:

"They would take the matter up with the company and let me know later, and at a later conversation * * * they informed me that they did not wish to stipulate themselves into the case."

From this evidence it is obvious that neither Diamond nor the city understood while the case was progressing, that the Barber Company was a party by representation or otherwise to that suit, but on the contrary both considered that it was not a party. The city desired to make it a party, but Diamond, who controlled the case, did not deem it wise to do so. To indulge the presumption now asked of us, that because the Barber Company agreed to pay for the services of some attorney whom the city counselor might select to assist him and did subsequently pay the same, it thereby became a party to the suit and is conclusively bound by the judgment rendered, would contradict the undoubted fact that the Barber Company was not, during the litigation, considered by either of the nominal parties to the suit as affected by it. But without the aid of contemporaneous construction placed upon it at the time by the parties, then and now interested, we have no difficulty in reaching the conclusion that there was no sufficient participation in that suit by the Barber Company to bind it by the judgment rendered. It took no control of the litigation. It had no right or opportunity to do so. The assistant whom the city counselor had selected took no orders or instructions from it. He worked under and subject to the city counselor. The Barber Company was interested to have no unfavorable precedent established which would affect its right of recovery for work done by it, but it was in no sense a party to the case so as to be bound by the judgment rendered in it. The Supreme Court of the United States, in Stryker v. Goodnow, 123 U. S. 527, 540, 8 Sup. Ct. 203, 31 L. Ed. 194, considered a similar case to this and expressed itself as follows:

"We have not overlooked the fact that a brief was filed at the hearing in this court, on behalf of the railroad company to support the claim of Wolcott that the title of that company was the best. Such a proceeding did not make the railroad company a party to the suit or bind it by the decree. Being interested in the question to be decided the company was anxious to secure a judgment that could not be used as a precedent against its own claims in any litigation that might thereafter arise in respect to its own property. It is not an uncommon thing in this court to allow briefs to be presented by or in behalf of persons who are not parties to the suit, but who are interested in the questions to be decided, and it has never been supposed that the judgment in such a case would estop the intervener, in a suit of his own which presented the same questions. It could be used as a precedent but not as an estoppel in the second suit."

In the case of Litchfield v. Goodnow's Administrator, 123 U. S. 549, 550, 8 Sup. Ct. 210, 31 L. Ed. 199, the Supreme Court, in treating of a similar subject, says:

"The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which the adjudication relied on was had. At the time of the commencement of the suit she was the owner of her lands, and they were described in the bill, but neither she nor any one who represented her title was named as a defendant. She interested herself in securing a favorable decision of the questions involved as far as they were

applicable to her own interests, and paid part of the expenses; but there was nothing to bind her by the decision. * * * She was indirectly interested in the result, but not directly. As the questions affecting her own title and her own liability for taxes were similar to those involved in the suit, the decision could be used as a judicial precedent in a proceeding against her, but not as a judgment binding on her and conclusive as to her rights. Her rights were similar to, but not identical with, those of the persons who were actually parties to the litigation."

In the case of Schroeder v. Lahrman, 26 Minn. 87, 1 N. W. 801, the Supreme Court of that state considered the present subject, and there says:

"The general rule is that a judgment operates as an estoppel only as between parties and their privies. There is a class of cases which hold that one not a party of record, but who is virtually the party in interest in the matter in controversy, and who, as between him and defendant, has the right or is under obligation to defend the action, and who does, in fact, conduct the defense, is to be regarded as a party, for the purpose of giving effect to the judgment as an estoppel. These have generally been cases where the person conducting the defense, without being a nominal party, was a master whose servant was sued for an act done by his authority, and in which he was bound to indemnify him, or a creditor who was bound to indemnify a sheriff for an act done by his direction. * * * The person not a party to the record nor a privy, against or in favor of whom it is sought to use a judgment as an estoppel, must not only, in fact, take part in the controversy, but must do so openly and to the knowledge of the opposite party, and for the defense of his own interests."

In the case of Patterson v. Barber Asphalt Paving Company (Minn.) 101 N. W. 1064, the Supreme Court of Minnesota, having under consideration its own prior decision of the Diamond Case, and speaking with direct reference to it, says:

"Defendant asphalt company was not a party to that action and is not bound by the judgment therein."

We have no doubt of the proposition that, however valuable the decision of the Diamond Case may be as a precedent, it does not operate as an estoppel upon the plaintiff in this action, or in any manner bind it to the conclusion there reached.

Is the Patterson Case such a lis pendens as subjected plaintiff to the judgment which might ultimately be rendered in it?

It was recently decided by this court in the case of Barber Asphalt Paving Co. v. Page Morris, United States District Judge, 132 Fed. 945, 66 C. C. A. 55, 67 L. R. A. 761, that the pendency in a state court of Minnesota of a prior action between the same parties for the same cause, furnishes no ground for abatement or stay of proceedings in a subsequent action brought by the same plaintiff in a federal court, where no conflict arises between the courts over the custody or dominion of specific property. The following cases are there cited fully sustaining its conclusion: Stanton v. Embrey, 93 U. S. 548, 554, 23 L. Ed. 983; Standley v. Roberts, 8 C. C. A. 305, 59 Fed. 836, 844; Merritt v. Barge Co., 24 C. C. A. 530, 79 Fed. 228, 233; Ogden City v. Weaver, 47 C. C. A. 485, 108 Fed. 564, 568; Green v. Underwood, 30 C. C. A. 162, 86 Fed. 427, 429.

In Merritt v. Barge Co., supra, Judge Thayer, in delivering the opinion of this court, makes use of the following language:

"In the case of Sharon v. Terry (C. C.) 36 Fed. 337, 359, 360, 1 L. R. A. 572, it was conceded by Mr. Justice Field that a plaintiff has a right to sue on the same cause of action in different jurisdictions, where nothing more than a personal judgment against the defendant is demanded; and, if such be the law, we can see no sufficient reason for denying the right of a defendant who has been sued in one jurisdiction for the recovery of a personal judgment against him, to bring an action against the plaintiff in another jurisdiction, although that action is of such nature that it may require a determination of the same issue which is involved in the first suit."

Such appears to be the settled rule of law in cases not involving the care or disposition of property in custodia legis. In that class of cases, as will be presently seen, different principles are applicable. The justice of the rule when considered in connection with the facts of the present case abundantly appears. The present plaintiff was a party defendant in the Patterson Case. That case, for some unexplained reason, was allowed to sleep from June 30, 1902, till April, 1904. Plaintiff, after having fully completed its work, commenced this action and diligently prosecuted it to final judgment, which was rendered in the court below October 25, 1904. Not till after this suit was begun was any activity displayed in the Patterson Case, and judgment on the merits was rendered in that case several months after plaintiff secured its judgment in this case. Application of any other rule than that just announced as is seen by the history of this case might not only deprive a nonresident suitor of his right to invoke the jurisdiction of the federal courts but might subject him to delay and embarrassment, which, without fault on his part, would seriously damage him, if not utterly defeat his right of recovery.

Our attention is called by defendant's counsel to a line of cases represented by Tilton v. Cofield, 93 U. S. 167, 23 L. Ed. 858; Whiteside v. Haselton, 110 U. S. 296, 4 Sup. Ct. 1, 28 L. Ed. 152; Scotland County v. Hill, 112 U. S. 183, 5 Sup. Ct. 93, 28 L. Ed. 692; Minneapolis, etc., Association v. Canfield, 121 U. S. 295, 7 Sup. Ct. 887, 30 L. Ed. 962, and it is claimed that they afford authority for their contention. We do not so understand the doctrine of those cases. They represent a well-defined class universally excepted from the general rule which we have applied to the determination of the present question. Either title to real estate or to some specific personal property which actually was in custodia legis or practically so by operation of an injunctive order restraining interference with them, is involved in them. In such cases the judgment sometimes operates as res adjudicata or the pendency of the suit subjects to its result, all parties who acquire an interest in the property pendente lite from the parties litigant. That doctrine, as already seen, is not applicable to a case like this where only a personal judgment is demanded even though it may require a determination of the same issue which was involved in the first suit. Merritt v. Barge Co., supra.

Did the departures and variations from the specifications on which bids were solicited and received, made in the contract as finally executed between the Barber Company and the city, avoid the contract on general principles of law governing the case?

When any public improvement is to be made the charter of the city of Mankato requires that "a plan or profile of the work to be

done accompanied with specifications for the doing of the same" shall be first deposited with the clerk of the board of public improvements and there remain at all times open to public inspection. After this is done, the board is required to advertise for proposals for doing the work. Section 27, c. 6 of the Charter; Laws Minn. 1891, p. 428. In the next section it is provided that all contracts for doing such work shall be awarded to the lowest reliable and responsible bidder. These charter provisions have been considered by the Supreme Court of Minnesota in Diamond v. City of Mankato, supra, where, following a strong line of precedents, it is held that the proposals and specifications for public work must be so framed as to permit free and full competition; that the contract must be let to the lowest responsible bidder, and (what for our present purposes is deemed most important) that municipal authorities cannot "enter into a contract with the best bidder containing substantial provisions beneficial to him not included in or contemplated by the terms and specifications upon which bids are invited." Nash v. City of St. Paul, 8 Minn. 172 (Gil. 143); Schiffmann v. City of St. Paul, 88 Minn. 43, 92 N. W. 503; Wickwire v. City of Elkhart, 144 Ind. 305, 43 N. E. 216; Dickinson v. City of Poughkeepsie, 75 N. Y. 65. This interpretation of the statute of Minnesota by its highest judicial tribunal is accepted by us as a satisfactory one. It commends itself to us as a reasonable and practicable rule, one calculated to give effect to the substance rather than letter of the law; and, notwithstanding the contention of defendant's counsel, supported by authorities in other jurisdictions, that "it is not material whether the changes are beneficial to the contractor or not," we cheerfully follow the construction which the Supreme Court of Minnesota has placed upon its own statute.

It is not contended that there was any want of power in the city to make the contract. All prerequisite steps were taken to that end. The only questions are whether there were such irregularities in the exercise of the power as to avoid the contract. It is conceded in argument by defendant's counsel that there is no evidence of any actual fraudulent collusion between the city and the Barber Company to give the latter some advantage; in fact, a careful consideration of the record convinces us that both the city and the Barber Company acted in the utmost good faith. Their only purpose was to make a contract and have the work done according to law. The decretal orders which interested parties secured against either the city or the contractor were obeyed scrupulously and neither party appears to have had any reason to believe there were any legal obstacles to entering into the contract and performing the same until sometime after it was finally executed and its performance entered upon. Now did the contract of April 23d contain any substantial provisions beneficial to the Barber Company not included in or contemplated by the terms of the specifications upon which bids were invited? It is urged by counsel for the city that it did in three particulars. A careful consideration of the original specifications (see statement of case) shows that the contractor after the expiration of 120 days from the completion and acceptance of the work, was to receive full payment for it, either out of money

realized by special assessments or from other money set aside by the council for the payment of the same, or in certificates of indebtedness to be issued by the city, bearing interest at the rate of 6 per cent. per annum. Every bidder, on consulting the specifications, could reasonably be assured of either getting payment for the work or the interest bearing certificates of the city, about 120 days after its completion and acceptance. After the bidding occurred and the Barber Company was found to be the lowest bidder, the restraining order issued in the Diamond Case and this necessitated an abandonment of that portion of the contract imposing any liability upon the city itself. By way of complying with the restraining order, and for no other purpose, the board of public works struck out the foregoing provision relative to the payment, and in lieu thereof inserted the following:

"The payment for said work to be made after the completion of the same and acceptance of the board of public works of said city, out of moneys lawfully raised by special assessment upon real estate and property benefited by said improvement other than property belonging to said city."

This change, it seems to us, was clearly to the disadvantage of the contractor; most certainly not beneficial to it. It required it to surrender the contingent personal obligation of the city as contained in the original specifications and all recourse to any assessment against real estate or property of the city, some of which fronted on the proposed improvement. Moreover, the contractor gave up the assurance that it would receive compensation practically in 120 days after it had completed the work; and accepted, in lieu thereof, the obligation of the city to proceed with due diligence to make the necessary assessments. The uncontradicted testimony is that it had for a long time been the custom not to levy an assessment until after the work under the contract was finished. Accordingly, notwithstanding the provisions of the charter authorizing a levy of an assessment as soon as the contract is let, it is established as a fact, that, in the usual course of things, the contractor, under the amended specifications and contract as made, would certainly not have received payment for its work any sooner than it would if the work had been done under and subject to the original specifications. After a careful investigation of this question and deferential consideration of the opposite view entertained by the Supreme Court of Minnesota in the Diamond Case, supra, we are irresistibly brought to the conclusion that the change worked no such benefit to the contractor as within the rule of law already announced, avoided the contract. On the contrary, we are strongly impressed with the good faith of both parties. The city was embarrassed with litigation tending to prevent the desired improvement. In a spirit of conciliation the successful bidder, at the request of the city, renounced apparent advantages and made concessions which rendered the improvement possible. Moreover, the finding that this change was not beneficial to the contractor, on direct issue joined, in accordance with the settled practice of this court in cases submitted to the trial judge without a jury, when there is a general finding only, is conclusive upon us.

The other two departures from the language of the specifications remain to be considered. The specifications contained a provision

subjecting the successful bidder and contractor to liability for liquidated damages in the sum of $20 per day for each day's delay after August 1, 1902, in the performance of the work. The specifications also contained a provision requiring a contractor to keep the street in good and sufficient repair for a period of 10 years and then provided, that "if during that period it is found that the pavement is defective from over-burning or improper mixing of material or any other cause or that the work has been done in an unskillful manner, the contractor shall" proceed to remove and replace 'the same to the satisfaction of the board of public works. The formal contract entered into by the contractor and the board and subsequently approved by the council, made the specifications a part of the contract, "to all intents and purposes as though fully copied and set up at length in the body of this agreement." In the formal contract the clause providing for liquidated damages at the rate of $20 per day for failure to complete the work on or before August 1st was subject to a proviso, as follows, "provided such failure or delay is not through unavoidable causes," and the clause guarantying the work for 10 years was qualified by inserting the word "preventable" between the words "other" and "cause," so that the clause in question read: "If during that period [10 years] it is found that the pavement is defective from over-burning or improper mixing of material or any other preventable cause the contractor shall repair," etc.

Did these modifications of the original specifications avoid the contract containing them? The learned trial judge, whose findings of fact in cases like this, as before stated, are conclusive upon us, determined that neither of them worked any substantial benefit or advantage to the contractor. We might properly, therefore, end this discussion by the application of the rule adverted to, but as this is an important case, and as the Supreme Court of Minnesota, after diligent and faithful consideration, has reached a conclusion different from that which our judgment dictates, we feel inclined to express more fully the reasons for the conclusion reached by us. We recognize to the fullest extent the necessity for holding municipal corporations to all the limitations imposed upon them by law. We also recognize the necessity of rigidly subjecting them to the observance of all safeguards provided by law for the purpose of securing honest and fair administration of public affairs; and we fully agree with the reasons assigned by the Supreme Court of Minnesota for requiring a strict enforcement of the rule laid down by that court for the guidance of municipal authorities in making contracts for public improvements. But the rule itself, heretofore quoted in full, is not a fast and unyielding rule. It does not prohibit all variations from the specifications. The charter of the city requires the execution of a formal contract after the "lowest reliable and responsible bidder" is ascertained, and it must be such as is approved by a two-thirds vote of the city council. The phraseology of the contract is left to be determined by the council. The Supreme Court of Minnesota, construing the charter provisions on this subject, has declared that the contract must not contain substantial provisions beneficial to the contractor which are not included in or fairly contemplated by the terms of the specifica-

tions. This rule manifestly and properly allows a reasonable degree of latitude in the details involved in the execution of powers conferred by fundamental law, essential to an intelligent and practical administration of public affairs. It does not and should not avoid a contract for important public improvements after performance by the contractor to the full satisfaction of the city, merely because of the use of words in the contract not found in the specifications, or for any mere irregularity, not involving substantial rights. The question, therefore, is whether the departures in question involve substantial changes beneficial to the contractor not fairly contemplated by the terms of the specifications. In answering this question we cannot shut our eyes to the conceded fact that the changes in question were not the result of any prearrangement or secret understanding between the city and the Barber Company, or deny the effect of this concession upon our minds.

The addenda to the effect that the city would not enforce the penalty of $20 a day for delay in the event of such failure came about through "unavoidable causes" when considered in the light of the specifications which were in effect written into the contract, does not, in our opinion, materially affect the obligation assumed by the contractor. "Unavoidable" causes, literally defined, are inevitable causes; such that no human power could prevent. It would be an inequitable and unwarrantable application of the law, to enforce a penalty against any person because acts of God or the public enemy, over which such person in the exercise of the highest degree of care could have no control, had produced a breach of the condition which nominally incurred the penalty. We think this addenda is nothing more than a reasonable construction placed by the parties themselves upon the terms of the specifications as they originally stood, and may be said to have been fairly contemplated by them. The same views might dispose of the addition of the word "preventable" in the guaranty clause, but there are additional reasons why the introduction of this word does not vitiate the contract. The original specifications after the clause providing that the contractor should keep the street in repair for 10 years read as follows:

"If during that period it is found that the pavement is defective from overburning or improper mixing of material, or any other cause, or that the work has been done in an unskillful manner," the contractor shall, etc.

This language clearly imports an obligation to do something, the necessity for which should arise from some act of commission or omission by the contractor, which in its nature is preventable by him. The general words, "or any other cause," by a familiar rule of construction expressed by the maxim noscitur a sociis, do not enlarge the scope of the particular words in the midst of which they appear. The addition of the word "preventable" therefore has relation to causes of the same kind as those particularized, namely, to over-burning or improper mixing of material, and do not diminish or affect the scope of the contractor's obligation. But if the words "or any other cause" are not limited by the context as just indicated, the language of the specifications in our opinion did not impose upon

the contractor the obligation to repair damages occasioned by causes beyond its control and which could not, under any circumstances, have been prevented by it. The measure of its duty was "ordinary care"; that kind of care in the particulars specified, as other persons similarly situated exercise under like circumstances, and nothing more. From this it is apparent that the addition of the word "preventable" did not at all reduce the contractor's obligation. If the baneful results could not, under any circumstances, have been prevented by the contractor, in our opinion no liability would have arisen either under the original or amended specifications.

The foregoing constitute all the alleged departures from the specifications which counsel for the city rely upon to avoid the contract upon its merits. We have given them a consideration commensurate with the fact that a majority of the Supreme Court of Minnesota, for whose opinions we entertain high respect, reached a result different from that reached by us, but we cannot conscientiously agree with them. We think Brown, J., who dissented from the opinion of the majority in the Diamond Case, expressed the correct view when he said:

"If the court is to be understood as holding that public authorities engaged in a lawful public improvement may not, as to such details as are here involved in the exercise of sound judgment, in good faith and without fraud or collusion, change and modify the terms and provisions of the contract under which the work is to be performed, from the specifications and conditions made part of the proposals and invitation to bidders, I dissent."

Accordingly we conclude that the case, on its merits, is with the plaintiff and we cannot give our sanction to the refusal by the city to make the necessary assessments—the only thing, which in law it could do—to provide means for paying for the improvement which it is now enjoying.

'Is the contract in question void because it creates an indebtedness against the city in excess of a permissible limit fixed by statute?

An answer to this question necessarily involves a consideration of the nature and character of the relief sought in the present action, and incidentally, a consideration of defendant's contention that no liability exists against the city for failure to make assessments in order to pay for plaintiff's work. Section 2 of chapter 204, p. 334, of the General Laws of 1893, is as follows:

"No city in this state shall at any time be authorized to issue bonds or to incur any debt or liability of any kind for any purpose in excess of 5 per cent. of the assessed valuation of the taxable property of such city according to the last preceding assessment."

There is much evidence tending to show that the contract price for making the improvement in question would cause the indebtedness of the city to transcend this statutory limit, but we do not feel called upon in the view we take of another question, to critically consider this evidence. In our opinion, the contract did not create a debt against the city within the meaning of the statute. Nor is the cause of action in this case founded on a debt. The contract obligated the officers of the city to perform a duty which the law imposed upon them and nothing more.

The state conferred power upon the city (see charter, Laws Minn. 1891, p. 417, c. 47) to make all necessary local improvements. It imposed a duty upon the city to make provision for payment for such improvements. It enacted, in language of command, that the expenses of such improvements "shall be defrayed * * * by assessment upon the real estate benefited thereby or by an assessment upon the real estate fronting thereon, to be levied in the manner hereinafter prescribed." It then prescribes that "all assessments for local improvements aforesaid, as provided in this chapter, shall be made by the board of public works," etc. This suit against the city is for damages for failure to discharge this statutory duty. It is an action sounding in tort, one classified at common law as an action on the case. The elements creating liability and necessary to be stated in a declaration at common law would have been: (1) The circumstances creating the duty; (2) the duty; (3) and the breach of the duty, and nothing more. Such averments are all that the plaintiff in this case employs in its complaint, and they are sufficient to constitute a meritorious cause of action. Daley v. City of St. Paul, 7 Minn. 390 (Gil. 311); Nash v. City of St. Paul, 8 Minn. 172 (Gil. 143). By the wrongful act of the city in failing to make assessments against property owners, the Barber Company was deprived of any means of securing payment for its work. It had agreed by contract that its only resort should be to such assessments, and the city by accepting the charter from the state agreed with the state and with all parties interested, that it would perform its duty and make the assessments as required.

In Peake v. New Orleans, 139 U. S. 342, 361, 11 Sup. Ct. 541, 35 L. Ed. 131, the Supreme Court of the United States dealing with a similar question, says:

"When a contract for local improvements is entered into, the contractor must look to the special assessments, and to them alone, for his compensation, and if they fail, without dereliction or wrong on the part of the city, neither justice nor equity will tolerate that it be charged as debtor therefor."

This court, in Barber Asphalt Paving Company v. City of Denver, 72 Fed. 336, 340, 19 C. C. A. 139, makes use of the following language:

"If a municipal corporation which has the power to make a contract for street improvements, contracts for them and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property and the city has power to make the assessment but fails to do so or fails to make valid assessments and thereby to provide a fund out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself."

The Supreme Court of Iowa in a recent case involving substantially the questions before us, Fort Dodge Electric L. & P. Co. v. The City of Fort Dodge (Iowa) 89 N. W. 7, citing many of its former decisions in support, very satisfactorily answers the contention of defendant's counsel in this case. It says:

"The city did not attempt to become indebted for this portion of the improvement, nor did the contractor agree to take the obligations of the city therefor. The liability of the city arises from its failure to discharge a duty which it could constitutionally discharge, arising out of a particular relation between the parties. It has been fully settled that the constitutional limitation does

not apply to an indebtedness arising out of a tort committed by the city. * * * Strictly speaking, an indebtedness cannot be created except by contract, either expressed or implied; and we feel constrained to hold that the indebtedness prohibited by the constitution is such as is created by the voluntary action of both the debtor and creditor. * * * It was not by any voluntary act of the contractor that the city became indebted to him; and it was not contemplated by the contract that in this respect the city should become his debtor; but, by its own negligence in failing to perform a duty which it had lawfully assumed, a claim against the city in favor of the holder of these certificates has arisen. * * * The liability of the city here is one growing out of negligent omission to do that which the city had the right to do, and which, if done, would not have involved any creation of indebtedness, and therefore we think the constitutional limitation does not apply."

In the case of Denny v. The City of Spokane, 25 C. C. A. 164, 79 Fed. 719, decided by the Circuit Court of Appeals for the ninth circuit, it appears that the city entered into a contract with a contractor for the making of a public improvement, to be paid for by levying and collecting an assessment against property benefited. For reasons unnecessary now to recite, the city was dilatory in levying a valid assessment. The court held that an action for damages by the contractor against the city for a delay in collecting the assessment was not within the purview of the prohibition against creating an indebtedness beyond the statutory limit. See, also, Barber Asphalt Paving Co. v. City of Harrisburg, 12 C. C. A. 100, 64 Fed. 283, 29 L. R. A. 401; Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659; Warner v. New Orleans, 167 U. S. 467, 477, 17 Sup. Ct. 892, 42 L. Ed. 239.

For the foregoing reasons we are of opinion that the contract of April 23d created no debt against the city within the meaning of the statute limiting the amount of indebtedness and that a legal liability was created by the city in failing and refusing to levy assessments to pay plaintiff's demand.

The conclusion reached on the questions last discussed is decisive of the next question urged by counsel for the city, namely, that because a contract between the Barber Company and the city creates a debt against the city, it is void for the reason that there was no money on hand or appropriated, levied or in process of collection when it was incurred, applicable to its liquidation, as required by the city charter. This contention likewise misconceives the obligation imposed upon the city by the contract as well as the nature of the demand sued for in this action.

The two following questions remain to be considered: (1) Was the contract void because the specifications prevented free and fair competition in that they limited the bidders to the use of Trinidad Pitch Lake or Bermudez asphalt? (2) Were the damages recovered excessive in that they embraced the cost of work done by plaintiff outside the limit of 30 feet fixed by the contract or beyond the reasonable scope of the contract as made?

Issues were joined on these questions, evidence was heard on them, and the trial court gave them careful attention. The general finding, well supported by substantial proof, disposes of them in favor of plaintiff and we see no reason for disturbing the conclusions reached.

There are several assignments of error based on the admission or exclusion of evidence. To them we have given careful consideration. Many of the objections are too general to be the basis of assignable error. Shandrew v. Chicago, etc., Railroad Co. (decided at the last term) 142 Fed. 320. Others relate to matters involved in the disposition of questions already made, and none of them, in our opinion, disclose any prejudicial error. The case was tried before the court without the intervention of a jury, and if the court was right in its treatment of the important questions already disposed of, the judgment was for the right party and no detail of the trial materially affected the result. This disposes of all questions raised by the assignment of errors which counsel deemed worthy of argument. While we have not followed each phase of the many questions argued with exact fidelity to the assignments of error, we have given painstaking consideration to each and every view presented by able counsel; and while we may not have directly commented upon them, we have taken them into consideration in reaching our final conclusion.

As a result of all we are satisfied that the judgment below was for the right party, and should be affirmed. It is so ordered.